# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2015

Lyle W. Cayce
Clerk

No. 13-20611

BERTHA M. FONTENOT, Individually and on Behalf of Those Similarly Situated; DAVID MILLER; SANTA ZAMARRON,

Plaintiffs - Appellees

v.

STEVE MCCRAW, in his official capacity as Director of the Texas Department of Public Safety; SUSAN COMBS, in her official capacity as Texas Comptroller of Public Accounts,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY and JONES, Circuit Judges, and GODBEY*, District Judge.

EDITH H. JONES, Circuit Judge:

The claims in this proposed class action arose from the wrongful assessment of surcharges under the Texas Driver Responsibility Program. The City of Houston misreported the charges against plaintiffs (and members of the class they seek to represent) to the State, and the State overcharged them as a result. Defendant-Appellant Steve McCraw, Director of the Texas Department of Public Safety, appeals the district court's partial denial of his motion to dismiss the case against him for want of jurisdiction.[1] Because this

---

* District Judge of the Northern District of Texas, sitting by designation.

No. 13-20611

case suffers from a number of jurisdictional defects, we **VACATE** the order of the district court and **REMAND** with instructions to dismiss.

## I.

The conflict here stems from the confusion of two laws, both of which can fairly be characterized as prohibiting "driving without a license." The first, more serious offense requires motorists to be licensed to drive. Tex. Transp. Code Ann. § 521.021.[2] A driver who violates this law is *unlicensed* — he is not permitted to operate motor vehicles on Texas roads. The other law requires a driver to have his license with him while driving and to produce it on demand of a peace officer. *Id.* § 521.025.[3] A driver who violates this law is a licensed driver who simply failed to produce appropriate documentation.

The Texas Driver Responsibility Program requires the Department of Public Safety ("DPS") to assess a $100 surcharge "for conviction of driving without valid license." Tex. Transp. Code Ann. § 708.104. This provision refers explicitly to unlicensed driving under § 521.021; no surcharge is imposed for a violation of the less serious offense.[4] DPS relies on third party reports to

---

[1] The district court dismissed all claims against defendant Susan Combs, Texas Comptroller of Public Accounts. Plaintiffs did not appeal this portion of the district court's ruling. Therefore, although Combs is named as an appellant here, she is no longer a party.

[2] Section 521.021 states:
LICENSE REQUIRED. A person, other than a person expressly exempted under this chapter, may not operate a motor vehicle on a highway in this state unless the person holds a driver's license issued under this chapter.

[3] Section 521.025 states:
LICENSE TO BE CARRIED AND EXHIBITED ON DEMAND; CRIMINAL PENALTY.
(a) A person required to hold a license under Section 521.021 shall:
    (1) have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated; and
    (2) display the license on the demand of a magistrate, court officer, or peace officer.

[4] Another section of the Program, likely more familiar to many drivers, assigns points for "moving violations," which the statute authorizes DPS to define. Transp. Code § 708.052-

No. 13-20611

ascertain the identities of drivers who have violated sections of the code. Using the third party information, the Department collects the surcharges once a year for three years and remits them to the Comptroller. Transp. Code § 708.156; Tex. Health & Safety Code § 780.002(a).

Plaintiff-Appellee Bertha Fontenot brought this § 1983 suit against the City of Houston and two private vendors, alleging that the City reported to DPS her conviction for failure to produce a license as a conviction for unlicensed driving and thereby wrongfully subjected her to surcharges. Fontenot's first amended complaint added David Miller and Santa Zamarron as plaintiffs and joined Appellant McCraw and State Comptroller Combs as defendants in their official capacities. The plaintiffs alleged that McCraw's assessment and collection of surcharges was *ultra vires* and violated due process under the Texas and U.S. Constitutions. Plaintiffs sought declaratory relief, an order enjoining the maintenance of incorrect records, and a refund of the illegal surcharges. The first amended complaint also contained class action allegations, but plaintiffs did not immediately seek certification of the class. The City admits that it erroneously reported tens of thousands of failure-to-produce convictions as unlicensed driving convictions, and it is undisputed that DPS relied on the City's erroneous reports when it assessed surcharges.

Combs and McCraw moved to dismiss the claims against them, arguing that: (1) the state law claims and request for surcharge refunds are barred by state sovereign immunity, (2) plaintiffs lack standing to seek prospective injunctive relief, and (3) the amended complaint fails to state a claim. They noted that the State was developing a method to refund the erroneously assessed surcharges. The district court granted the motion to dismiss with

---

054. DPS could list § 521.025 as a moving violation and assess points for violating it, but it has not done so as of this opinion. 37 Tex. Admin. Code § 15.89(b)-(c).

respect to the state law claims against McCraw and all claims against Comptroller Combs, who merely received the funds. The court, however, ultimately denied the motion to dismiss the federal claims against Appellant McCraw. The court acknowledged that state sovereign immunity would prevent an order directing state officials to pay retrospective money damages under the doctrine of *Ex Parte Young*. The court nonetheless opined that if the plaintiffs were "to prevail and the Court were to grant declaratory relief, that grant would necessarily precipitate refund of the plaintiffs' money." It concluded that "it would be an anomaly for this Court to enter an order that [McCraw's] action is unconstitutional, while permitting Texas to keep the fruits of that unlawful behavior." The court also rejected the argument that the plaintiffs lacked standing, reasoning that the DPS's maintenance of a public record reflecting an improper conviction constituted a "continuing, present adverse effect." McCraw timely appealed.

Before us on appeal are the claims of the three plaintiffs against Appellant McCraw.[5] The claims are of two types: a "record correction claim" demanding that the State expunge from plaintiffs' driving records any reference to the more serious offense, and a "refund claim" calling for the return of surcharges already paid. Appellant launches a multifaceted jurisdictional attack based on plaintiffs' standing, mootness and state

---

[5] On October 10, 2013, plaintiffs moved to certify a class that contained allegations against all of the remaining defendants. Together with the motion the plaintiffs filed a notice informing the court that they had prepared, but not filed, their motion for class certification before the state defendants filed an interlocutory appeal (October 8, 2013) that divested the district court of jurisdiction over the state defendants. On August 7, 2014, the district court granted summary judgment for all remaining defendants and dismissed the class certification motion as moot.

No. 13-20611

sovereign immunity.[6]   These are all issues of law that we review *de novo.*  The denial of the state sovereign immunity defense is a reviewable interlocutory order.  *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011).

## II.

### A. Standing

McCraw initially challenges plaintiffs' standing to sue for correction of their driving records.  Article III standing to sue requires that a plaintiff has suffered injury (a) to a legally protected interest, and that is actual or imminent, concrete and particularized; (b) that is fairly traceable to the challenged action of the defendant; and (c) that is redressable by the court.[7] The court must evaluate each plaintiff's Article III standing for each claim; "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 2183 n.6 (1996).  Assuming, as we do, that the maintenance of accurate DPS driving records is a cognizable interest the invasion of which confers standing, Miller and Zamarron were proper plaintiffs but Fontenot lacks standing.

Plaintiff Fontenot amended her complaint to add McCraw as a defendant on April 22, 2013.  But by then, the Houston Municipal Court had alerted DPS to the City's inaccurate reporting.  Based on this new information, on January 29, 2013, DPS removed the unlicensed driving conviction from Fontenot's record and replaced it with a failure-to-display conviction.  Therefore, when plaintiffs brought McCraw into this suit, McCraw had already

---

[6] McCraw argues that plaintiffs did not adequately plead a continuing violation of federal law.  Because we resolve the case on other grounds, we need not express any view on this issue.

[7] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).

5

provided a complete remedy for Fontenot's record correction claim. If Fontenot has standing, it is only for purposes of her refund claim.[8]

On the other hand, DPS corrected the records of plaintiffs Miller and Zamarron only after McCraw was made a defendant. Unlike plaintiff Fontenot, these two plaintiffs' records still reflected the wrong convictions when McCraw was sued. Consequently, they properly alleged standing to sue for all asserted claims.

### B. Mootness

Even when a plaintiff has standing at the outset, "[t]here must be a case or controversy through all stages of a case[.]" *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–27 (2013) (*quoting Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 1183 (1982) (per curiam)). *See also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055, 1068 (1997) (holding that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334 (1975)). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

---

[8] DPS claims to have refunded Fontenot's wrongly assessed surcharges, and Miller and Zamarron dispute whether they received full refunds. However, McCraw does not challenge any plaintiff's standing on the refund claims. Although Article III standing is jurisdictional and we must raise it *sua sponte*, we decline to do so in the absence of briefing from any party when an alternative jurisdictional ground disposes of the refund claims. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570 (1999).

No. 13-20611

It is undisputed that DPS corrected Miller's record on April 25 and Zamarron's record on May 21, 2013. Because there remains no live controversy between the parties as to the accuracy of the named plaintiffs' driving records, the injunction they seek would be meaningless.

The parties acknowledge, however, that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 709 (2000). "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Id.* at 189, 120 S. Ct. at 708 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 1074 (1982)).[9] Defendant-induced mootness is viewed with caution because "there exists some cognizable danger of recurrent violation" where "a defendant [] follows one adjudicated violation with others." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 634, 73 S. Ct. 894, 898 (1953).

Consequently, "allegations by a defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case." *Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 n.4 (5th Cir. 2008). The overarching goal is to determine whether the defendant's actions are mere "litigation posturing" or whether the controversy is extinguished. *See, e.g., Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 426 n.3 (5th

---

[9] In the context of mootness, an action is voluntary when taken free from compulsion of an enforcement action or judicial order. *See Envt'l Conservation Org. v. City of Dall*, 529 F.3d 519, 528 (5th Cir. 2008).

7

Cir. 2013) (this court was "not persuaded that the speculative possibility that BP could some day return to this site, after the tremendous time, energy, and manpower expended to close it, saves the Center's current claims from a finding of mootness").

McCraw calls to our attention the somewhat contrary intuition that we "are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude[.]" *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd on other grounds sub nom. Sossaman v. Texas*, 131 S. Ct. 1651 (2011). *Sossamon* asserted that because government officials are public-spirited and not motivated by self-interest, a government defendant is less inclined to act in bad faith. *Id.* It concluded that "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* As the plaintiffs note, there are no formally announced changes to policy in the present case, but that is irrelevant here. McCraw has already done for plaintiffs all that they could ask. The two plaintiffs who had standing to sue McCraw have received a record correction — indeed, received it merely by asking for it. Consequently, there is no reason to believe that Miller and Zamarron continue to have a live controversy with McCraw. The very nature of the records correction controversy, which was precipitated by the plaintiffs' failures to produce a driver's license, counsels that the defendant is not likely "to return to his old ways." *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004) (quoting *Laidlaw*, 528 U.S. at 190, 120 S. Ct. at 708). Unless Miller and Zamarron plan to be driving again without carrying their licenses, they have nothing to fear. The controversy as to these plaintiffs has been extinguished.

## C. Relation Back

Miller and Zamarron alternatively contend that even if their claims for record correction had become moot before a class certification motion was filed, that motion "relates back" to the filing date of the first amended complaint in order to keep the class action alive. This argument seeks to extend current Fifth Circuit law, which in turn extends (and may be undermined by) Supreme Court precedent. To examine the relation back argument, we work forward from the Supreme Court decisions.

In 1975, the Supreme Court modified the general rule of mootness, which is that a class action becomes moot when the putative representative plaintiff's claim has been rendered moot before a class is certified. The Court declined to find mootness where the named class action plaintiff's claim becomes moot *after* the class was certified. *Sosna v. Iowa*, 419 U.S. 400, 402–03, 95 S. Ct. 553, 559 (1975). Important to the Court's reasoning was that "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named plaintiff]." 419 U.S. at 400, 95 S. Ct. at 557. Consequently, a live controversy continued to exist. *Id.* at 399–402, 95 S. Ct. at 558. The Court concluded:

> There must . . . be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class is certified by the District Court . . . . The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot.

419 U.S. at 402, 95 S. Ct. at 559. The *Sosna* Court took care to "disturb no principles . . . with respect to class action litigation." *Id.* at 402-03 (citing *Bailey v. Patterson*, 369 U.S. 31, 82 S. Ct. 549 (1962); *Rosario v. Rockefeller*, 410 U.S.

9

No. 13-20611

752, 93 S. Ct. 1245, 1249 (1973); *Hall v. Beals*, 396 U.S. 45, 90 S. Ct. 200 (1969)); *see also Walker v. Haynes*, 659 F.2d 46, 47 (5th Cir. 1981).

The Court subsequently applied *Sosna*'s reasoning to mootness that follows an order denying class certification. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404, 100 S. Ct. 1202, 1212 (1980). The Court there held that a putative class representative can maintain an action when the suit "would have acquired the independent legal status described in *Sosna* but for the district court's erroneous denial of class certification[.]" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (discussing *Geraghty*). *Geraghty* was explicitly limited to cases in which the named plaintiff's claim becomes moot after the time the district court denied certification and the district court's "erroneous[] deni[al] … if correctly decided, would have prevented the action from becoming moot." *Geraghty*, 455 U.S. at 404, 100 S. Ct. at 1212. In that scenario, "the corrected ruling 'relates back' to the date of the original denial." *Id.* at 404, 100 S. Ct. at 1213.

Miller and Zamarron cannot avail themselves of *Sosna* or *Geraghty*. *Sosna* requires that "the named plaintiff had a personal stake in the action *at the time the class was properly certified*[.]" *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990) (emphasis added). And *Geraghty* extends this exception to cases where the named plaintiffs contend that class certification was *wrongly denied*. Here, no class action certification motion had been filed against McCraw, much less granted or denied when DPS corrected their driving records and rendered those claims moot. But that is not the end of the story.

A "separate, but related, line of cases" evolved from a footnote[10] in *Sosna*, which "held that an 'inherently transitory' class-action claim is not necessarily

---

[10] The footnote itself says that whether "the controversy . . . becomes moot as to [the named plaintiffs] before the district court can reasonably be expected to rule on a certification

moot upon the termination of the named plaintiff's claim." *Genesis Healthcare*, 133 S. Ct. at 1530 (referring to *Sosna*, 419 U.S. at 402 n.11, 95 S. Ct. at 559 n.11). *See Swisher v. Brady*, 438 U.S. 204, 98 S. Ct. 2699 (1977) (challenging juvenile delinquency procedures); *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854 (1975) (challenging constitutionality of pretrial detentions). *Genesis Healthcare* explained that "[t]he 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." 133 S. Ct. at 1531.

This court extended the concept of relation back even farther in holding that "a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when . . . there is pending before the district court a timely filed and diligently pursued motion for class certification." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. 1981). In other words, a court order granting or denying class certification, and therefore resolving the separate status of the class, is unnecessary to maintaining a live class action suit despite the mootness of the named plaintiff's case. *See also Murray v. Fidelity Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (discussing *Zeidman*). *Zeidman* acknowledged that the *Sosna*-created relation back doctrine had previously been applied only in cases where the plaintiffs' claims were "inherently transitory," whereas the plaintiffs' claims in *Zeidman* had been rendered moot by the defendants' "purposive" action of offering a full tender of their damages. But the *Zeidman* court believed "the result should be no different when the

---

motion may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id.*

11

defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification." 651 F.2d at 1050. A defendant's ability to "pick off" successive plaintiffs' claims in this way, the court reasoned, is no less inimical to procuring judicial review than is the inherently transitory nature of a substantive claim.[11]

The current status of *Zeidman* may be in doubt. In *Genesis Healthcare*, the Supreme Court took pains to clarify its class action mootness decisions. That *Genesis Healthcare* specifically ruled on how mootness doctrine applies to collective actions under Section 216(b) of the Fair Labor Standards Act renders the Court's discussion no less authoritative in regard to class action mootness cases. First, *Genesis Healthcare* notes that both *Sosna* and *Geraghty* pertain only to cases where the named plaintiff's claim became moot after a class certification decision had been made. 133 S. Ct. at 1530. Second, the Court explained that the relation back doctrine applies when the substantive claims raised "'are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" *Genesis Healthcare*, 133 S. Ct. at 1531 (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S. Ct. 1661, 1667 (1991)). Thus, the "inherently transitory" basis for relating back a class certification ruling to the date the complaint was filed is focused not on the defendant's litigation strategy, but on the substance of the plaintiff's claim. 133 S. Ct. at 1531 (citing *Swisher*, 438 U.S. at 213 n.11, 98 S. Ct. 2699, 2705 n.11; *Spencer v. Kemna*, 523 U.S. 1, 17–18, 118 S. Ct. 978, 988 (1998)). *Genesis*

---

[11] At least two other circuits have followed *Zeidman*. *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011); *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004), as amended (Oct. 22, 2004).

*Healthcare* does not foreclose the broader *Zeidman* approach to relation back doctrine, but the Court's explanation undermines, at least in money damages cases, *Zeidman*'s analogy between the "inherently transitory" exception to mootness and the strategic "picking off" of named plaintiffs' claims.

For present purposes, McCraw does not contend that *Zeidman* has been overruled, and we need not finally decide that question. What is clear from *Genesis Healthcare* and *Zeidman* is that any extant exception must be extended for plaintiffs to avoid mootness in the instant putative class action. Here, not only had the district court not ruled on the named plaintiffs' certification motion, a prerequisite to applying *Sosna* and *Geraghty*, but no certification motion was even pending when DPS corrected Miller's and Zamarron's driving records and mooted their individual claims. Yet *Zeidman* is predicated on a class certification motion's having been diligently filed and pursued at the time the named plaintiff's claim becomes moot. Further, when the class certification motion was filed, it expressly excluded McCraw.[12] Thus, only by extending this circuit's precedent beyond *Zeidman* could we apply the relation back doctrine here.

In this case, there is no need to create another exception to mootness. In *Murray*, we declined to extend *Zeidman* to allow relation back where a joinder motion was pending, but not yet ruled on, for a class representative plaintiff whose individual claim was not moot. The plaintiffs there argued they should be allowed a "reasonable period of time to file a motion for class certification

---

[12] To the extent the plaintiffs rely on this court's decision in *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008), the case is inapposite. First, *Sandoz* extended *Zeidman*'s relation back ruling to a Fair Labor Standards Act collective action case and has probably been overruled in its specific holding by *Genesis Healthcare*. *Genesis Healthcare* rejected a factually similar relation back holding of the Third Circuit, which relied in part on *Sandoz*. Second, even on its facts, *Sandoz* is distinguishable because the plaintiffs' class certification motion here excluded McCraw.

before their claims can be mooted by tender of the individual damages." *Murray*, 594 F.3d at 422. Because the plaintiffs "had a readily available means of preventing the defendants from mooting their suit[,]" this court saw no reason to extend *Zeidman*. *Id*. Likewise in this case, the plaintiffs could have filed a class action certification motion against McCraw, and indeed could have filed the motion simultaneously with the filing of their first amended complaint. This case, like *Murray*, is simply not one in which an exception is required lest "otherwise the issue would evade review." *Sosna*, 419 U.S. at 402, 95 S. Ct. at 559. Where plaintiffs may avoid being "picked off" by using the tools within the Federal Rules of Civil Procedure, the rationale for creating further exceptions to mootness cannot be sustained.[13] *See Miss. Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1057 (5th Cir. 1991) (requiring "special circumstances" for applying exceptions).

In sum, when Miller's and Zamarron's individual records correction claims became moot, so did the class action case. The general rule rather than its exceptions prevails.

## III.

Turning to the refund claims, we consider whether the State's sovereign immunity, codified partly in the Eleventh Amendment, requires their dismissal. If the plaintiffs' individual refund claims are nonjusticiable in federal court, the class claims fail as well.

The essential principles are well established. One privilege of Texas's state sovereignty is "not to be amenable to the suit of an individual without its

---

[13] *Mabary v. Hometown Bank, N.A.*, 771 F.3d 820 (5th Cir. 2014), does not extend any exception to the general mootness rule. In that opinion a panel of this court expressly held that the defendant's "attempt to 'pick off' [the plaintiff's] claim before the court could decide the issue of class certification *fits squarely within* the 'relation back' doctrine[.]" *Id*. at 825 (emphasis added).

consent." *Hans v. Louisiana*, 134 U.S. 1, 13, 10 S. Ct. 504, 506 (1890) (quoting THE FEDERALIST No. 81 (Alexander Hamilton)).  Although the plaintiffs sued McCraw, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989).  In *Ex parte Young*, however, the Supreme Court created an "exception" to state sovereign immunity on the theory that an *ultra vires* act "is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional." *Ex parte Young*, 209 U.S. 123, 159, 28 S. Ct. 441, 454 (1908). This doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law[.]"  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 688 (1993).  Suits by private citizens against state officers in their official capacity are not, therefore, categorically barred.  Thus, "[i]n determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Svc. Comm'n*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 2047 (1997) (O'Connor, J., concurring in part and concurring in the judgment).  The Court has "refused to extend the reasoning of *Young* . . . to claims for retrospective relief." *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426 (1985).

Plaintiffs' suit for refunds on its face seeks to recover their erroneously inflicted surcharges from the state's treasury.  To avoid the apparent Eleventh Amendment bar, they sued McCraw in his official capacity and attempt to

characterize the refunds in terms of McCraw's alleged ongoing *ultra vires* acts for which they seek "prospective" declaratory and injunctive relief.  Their first amended complaint seeks a declaratory judgment and "permanent injunction . . . ordering correction of driving records maintained by the State of Texas."  They articulate the refund claims in three ways.  First, they allege that the ongoing violation by McCraw consists in DPS's maintaining their false driving records, as a result of which they remain vulnerable to having additional surcharges imposed in addition to those already illegally collected.  Second, they describe the refund claims as "ancillary relief" to the injunctive and declaratory relief pertaining to the driving records.  Third, they contend the State has the obligation to return their money that was wrongfully taken, and that this theory is cognizable apart from *Ex Parte Young*'s limitation to prospective, injunctive relief.

The plaintiffs' first contention, that they seek refunds as prospective relief for potential future surcharges, runs afoul of the mootness of their records correction claims.  Because their individual driving records were corrected by DPS shortly after the first amended complaint was filed, there is no basis for their allegation that the agency will collect additional surcharges.  While McCraw's act of maintaining erroneous driving records might have been an ongoing violation susceptible of prospective injunctive relief, *see Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632 (2011) (continuing refusal to turn over medical records), such a claim is undisputedly counterfactual as to the named plaintiffs.

Plaintiffs' second characterization of the refunds, which the district court adopted, is that such relief would be incidental to the declaratory or injunctive relief that is permitted under *Ex Parte Young*.  This argument misunderstands the ancillary effect corollary, which the Supreme Court clearly expressed in

*Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347 (1974). There, plaintiffs sued officials of the State of Illinois for "administering [] federal-state programs . . . in a manner inconsistent with various federal regulations and with the Fourteenth Amendment to the Constitution." *Id.* at 653, 94 S. Ct. at 1351. The district court rendered declaratory and injunctive relief requiring compliance and ordered defendant State officials to pay out the wrongfully withheld funds. *Id.* at 656, 194 S. Ct. at 1352. The Seventh Circuit affirmed. *Id.* at 664, 94 S. Ct. at 1356.

The Supreme Court reversed, holding that, regardless of the nature of the relief, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by" state sovereign immunity. *Id.* at 663, 666 94 S. Ct. at 1356, 1357. The logic of *Ex Parte Young* — that a state official acting without authority is not acting as the State — is contradicted when the court's order requires payment of an accrued liability from the state treasury. *Id.* at 664-65, 94 S. Ct. at 1356-57. *Edelman* also reaffirmed *Ford Motor Company v. Department of Treasury*, a taxpayer's refund action against Indiana for an allegedly unconstitutional tax. 323 U.S. 459, 65 S. Ct. 347 (1945), *overruled on other grounds by Lapides v. Bd. of Regents*, 545 U.S. 613, 122 S. Ct. 1640 (2002). Although "[t]he term 'equitable restitution' would seem even more applicable" in *Ford Motor Company* because the Indiana taxpayer (unlike the welfare recipients in *Edelman*) once held the funds, the Court nevertheless "had no hesitation in holding that the taxpayer's action was a suit against the State, and barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 669, 94 S. Ct. at 1358.

Still, as the Court recognized, cases have been permitted in which the judgment against a state officer had "an ancillary effect on the state treasury[.]" *Id.* at 651, 668, 94 S. Ct. at 1358. The injunction in *Ex parte Young*

17

itself "was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions." *Id.*[14]  In such cases, purely prospective decrees have the ancillary effect of making state officials "more likely [] to spend money from the state treasury," but they are "permissible and often an inevitable consequence of the principle announced in *Ex parte Young*[.]"  *Id.*  *See also Milliken v. Bradley*, 433 U.S. 267, 290, 97 S. Ct. 2749, 2762 (1977) (upholding district court order requiring State to bear part of cost of future compliance).

The district court here thought it anomalous to invalidate McCraw's erroneous collection of the surcharges "while permitting Texas to keep the fruits of that unlawful behavior." Ancillary relief, however, cannot stand alone. It must accompany and further some other — and otherwise appropriate — relief.  The district court's order commits the identical mistake as the payment order in *Edelman*:

> It requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation [to prior victims].

*Edelman*, 415 U.S. at 669, 94 S. Ct. at 1358.  The order is "in practical effect indistinguishable from an award of damages against the State." *Id.*[15]

---

[14] *See also Graham v. Richardson*, 403 U.S. 365, 91 S. Ct. 1848 (1971) (welfare officials were prohibited from denying welfare benefits to otherwise qualified alien recipients); *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011 (1970) (New York City welfare officials enjoined from following state procedures terminating welfare benefits without prior hearing).

[15] The Supreme Court reaffirmed in *Papasan* that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan v. Allain*, 478 U.S. 265, 278, 106 S. Ct. 2932, 2940 (1986).  But it also held that compensatory relief against States "is barred even when the state official is the named defendant" and even when "the relief is tantamount to an award for damages…even though styled as something else." *Id.*

No. 13-20611

Plaintiffs assert that the refunds they seek are ancillary, just like the relief ordered in a Second Circuit case where the court enjoined the operation of a New York statute that delayed payment of certain state employees' paychecks. *Ass'n of Surrogates & Sup. Ct. Reporters v. New York*, 940 F.2d 766, 774 (2d Cir. 1991). The ancillary effect of the judgment required the State to pay what and when it otherwise would have done before the offending statute was passed. In that unusual situation, without ancillary relief, the judgment would have served the State's interest by terminating its payment obligation. *Association of Surrogates* is distinguishable because plaintiffs here can point to no injunctive relief for which a refund order would be required "to shape [McCraw's] official conduct to the mandate of the [c]ourt's decrees[.]" *Id.* (quoting *Edelman*, 415 U.S. at 668, 94 S. Ct. at 1358).

State sovereign immunity here bars "the retroactive portion of the relief awarded by the District Court[,]" just as it did in *Edelman* and *Ford Motor Company*. *Edelman*, 415 U.S. at 669, 94 S. Ct. at 1358.

Plaintiffs' final thrust is to characterize their requested monetary relief as something like replevin, a claim for return of their wrongfully taken property. Relying principally on the Supreme Court's decision in *Florida Dep't of State v. Treasure Salvors*, 458 U.S. 670, 102 S. Ct. 3304 (1982), plaintiffs urge that DPS engages in a continuing violation by refusing to return their property without due process. In *Treasure Salvors*, the Court held that plaintiffs could maintain an in rem admiralty suit against the State of Florida in federal court to obtain possession of sunken ship artifacts. *Treasure Salvors*, however, will not bear the weight of plaintiffs' argument. First, suing a state for the return of identifiable property is far different from suing for a return of money, which is fungible once improperly paid into state coffers. The *Treasure Salvors* plurality opinion draws this distinction, noting that the decision,

19

consistent with *Edelman*, "did not seek any attachment of state funds and would impose no burden on the state treasury." 458 U.S. at 699, 102 S. Ct. at 3321.[16] Second, the case has no majority opinion and thus no controlling rationale. Third, this court has correctly cited *Treasure Salvors* for the narrow proposition that "a federal court is not empowered to adjudicate the State's interest in property without the State's consent." *John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 672 (5th Cir. 1994).

This court likewise refused to allow plaintiffs to reach into the state treasury. *Jagnandan v. Giles*, 538 F.2d 1166, 1173 (5th Cir. 1976). The plaintiffs appealed a judgment that denied them recovery of excess tuition they had paid state colleges under an unconstitutional statute. *Id.* This court held that, despite the presence of university trustees as defendants, "the State of Mississippi [was] the real party defendant." *Id.* at 1174. State sovereign immunity, we held, "protect[s] against federal judgments requiring payment of money that would interfere with the state's fiscal autonomy and thus its political sovereignty." *Id.* at 1176. Important to the analysis were the facts that the tuition payments were "commingled with all moneys held by the University" and were public funds. *Id. See also Nems v. Calif. Dep't. of Health Care Servs.*, 712 F.3d 461, 469-70 (9th Cir. 2013) (state sovereign immunity bars suit for refund of money erroneously charged by State under Medicare).

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991), on which plaintiffs rely, is inapposite. That case considered a challenge to a state tax that was in tension with ERISA. *Id.* at 1101-02. Although the State challenged

---

[16] Two related Ninth Circuit cases cited by plaintiffs are distinguishable precisely because the accounts and property in those cases were escheated, but not yet permanently escheated to the State, "because the State held such funds in custodial trust for the benefit of property owners—the funds were not state funds." *Suever v. Connell*, 439 F.3d 1142, 1147 (9th Cir. 2006) (citing *Taylor v. Westly*, 402 F.3d 924, 933 (9th Cir. 2005)).

jurisdiction on sovereign immunity grounds, the opinion dealt exclusively with the Tax Injunction Act.[17]  It is unclear whether the decision *sub silentio* deemed ERISA to have abrogated state sovereign immunity, but in any case the opinion does not discuss sovereign immunity.  We decline to infer from that opinion a principle inconsistent with controlling authority.  *Cf. Edelman*, 415 U.S. at 670, 94 S. Ct. at 1359 (declining a similar inference from *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322 (1969)).

For these reasons, this court will not "assum[e] the control of the administration of the fiscal affairs of the state to the extent that may be necessary to accomplish the end in view."  *Louisiana ex rel. Elliott v. Jumel*, 107 U.S. 711, 722, 2 S. Ct. 128, 137 (1883).  The plaintiffs' refund claims are barred by the Eleventh Amendment and state sovereign immunity.

## IV.

Plaintiff Fontenot lacks standing to sue.  Plaintiffs Miller and Zamarron have no live controversy with the State for correction of driving records, and consequently the class action claim for similar relief is moot and nonjusticiable.  The refund claims to recover surcharges are barred by the Eleventh Amendment and sovereign immunity.  These conclusions render it unnecessary to discuss the Tax Injunction Action, 28 U.S.C. § 1341, as a jurisdictional defense, which the State raised for the first time in this court.  We **VACATE** the district court's order denying state sovereign immunity and **REMAND** with instructions to dismiss for lack of federal jurisdiction.

---

[17] Specifically, we held that because "ERISA preempts [the state tax law] [i]t necessarily follows that there can be no effective state remedy under the Tax Injunction Act which, therefore, is inapplicable in an ERISA setting." *E-Systems., Inc. v. Pogue*, 929 F.2d 1100, 1102 (5th Cir. 1991)