# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 2, 2016

Lyle W. Cayce
Clerk

No. 14-20763

BERTHA M. FONTENOT, Individually and on Behalf of Those Similarly Situated; DAVID MILLER; SANTA ZAMARRON,

> Plaintiffs - Appellants

v.

CITY OF HOUSTON; CLERK OF COURT CHARLOTTE BOOKER,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-3503

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

David Miller appeals the district court's summary judgment in favor of the City of Houston in this suit brought under 42 U.S.C. § 1983. Miller alleges that the City violated his due process rights when it reported to the State that he had been convicted of committing a more serious driving offense than in fact was true. As a result of the misreporting, the State assessed a surcharge

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20763

against Miller for which he was not statutorily liable. The City's misreporting was not unique to Miller; for over six years, the City of Houston regularly reported convictions like Miller's as different, more serious convictions. Miller has not created a fact dispute, however, as to whether the City had a policy or custom of misreporting convictions. Accordingly, Miller cannot succeed on his municipal liability claim and we must AFFIRM the district court's grant of summary judgment in favor of the City.

## I.

This suit arises from the conflation of two sections of the Texas Transportation Code by the Municipal Courts Department of the City of Houston. Both sections proscribe what might be characterized as "driving without a license." *See Fontenot v. McCraw*, 777 F.3d 741, 744 (5th Cir. 2015). One section prohibits a person from driving on Texas roads unless that person has been issued a driver's license (hereinafter, "Unlicensed Driver"). TEX. TRANSP. CODE ANN. § 521.021.[1] The other section requires that a person have his or her driver's license in his or her possession when driving and that he or she display the license when asked to do so by a police officer (hereinafter, "Failure to Display"). TEX. TRANSP. CODE ANN. § 521.025.[2] Violation of either section is classified as a Class C misdemeanor. *See* TEX. PENAL CODE ANN. § 12.03(b). Crucially for purposes of this suit, however, individuals convicted only of Unlicensed Driver (§ 521.021) are subject to a state-imposed surcharge

---

[1] In its entirety, § 521.021 states: "License Required. A person, other than a person expressly exempted under this chapter, may not operate a motor vehicle on a highway in this state unless the person holds a driver's license issued under this chapter."

[2] In relevant part, § 521.025 states:

(a) A person required to hold a license under Section 521.021 shall:
  (1) have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated; and
  (2) display the license on the demand of a magistrate, court officer, or peace officer.

2

of up to $100 per year pursuant to a Driver Responsibility Program.  *See* TEX. TRANSP. CODE ANN. § 708.104.  The state does not assess a surcharge for convictions of Failure to Display (§ 521.025).  The Houston Municipal Courts Department is required to report convictions for either offense to the Texas Department of Public Safety ("DPS"), which assesses surcharges as appropriate.  *See* TEX. TRANSP. CODE ANN. § 521.347(b).

The Houston Municipal Court is the largest fine-only court in the United States.  In 2001, the court began work on transitioning to a new electronic case management system called the Municipal Courts Integrated Case Management System ("ICMS").  ICMS finally went online in April 2006.  Among its many features, ICMS interfaced with external systems to exchange data and was used to report convictions to DPS.  Part of the transition to ICMS required matching the Houston Municipal Courts Department's internal codes for various convictions with the corresponding codes used internally by DPS.  In addition to computer programmers, individuals from the clerk's office and the prosecutor's office were involved in ensuring that the codes were matched correctly.  Before ICMS went online, the team working on the transition reviewed a sample of conviction data to make sure it was correct.

In December 2012—over six years after ICMS went live—the Houston Municipal Courts Department learned that it had been incorrectly reporting convictions for Failure to Display as convictions for Unlicensed Driver to DPS. Specifically, the City's Action Code "TP60," which indicates Failure to Display, had been linked in ICMS with the State DPS code "BMV 3103" for Unlicensed Driver rather than with the correct code, "BMV 3263."  Between 2006 and 2012, approximately 50,000 convictions for Failure to Display (which are not eligible for a state-assessed surcharge) were incorrectly reported to DPS as convictions for Unlicensed Driver (which are subject to a surcharge).  Upon being informed of the issue in 2012, the Houston Municipal Courts Department

conducted an internal investigation and concluded that the problem was due to a "coding error" but was unable to determine when precisely the error occurred or who had made the error. The Courts Department updated ICMS to properly link the City's code for Failure to Display with the corresponding DPS code and forwarded amended data files to DPS to correct its prior mistaken reports. DPS in turn endeavored to correct the corresponding conviction records and refund the improperly-assessed surcharges.

There is no evidence that anyone in the Houston Municipal Courts Department knew that the convictions for Failure to Display were being improperly reported to DPS prior to 2012. The Department employees who were involved in implementing ICMS have described the issue as "inadvertent," a "mistake," or a "coding error." Rex Billings, the Assistant Director of the City of Houston's Information Technology Services, explained that the incorrect code was entered into ICMS at one point in time and that that mistake impacted approximately 50,000 cases, not that any employees incorrectly entered the code 50,000 times. He also testified, however, that he "believe[d] that the City of Houston made a decision that led to TP60 being associated with 3103," and that this was "not the sort of accidental mistake as if someone fell against a keyboard."

Plaintiff-appellant David Miller was one of the individuals whom the Houston Municipal Courts Department incorrectly reported to DPS as having been convicted of Unlicensed Driver. Accordingly, although Miller was found guilty of Failure to Display, he later received a "Surcharge Notification" from a State of Texas vendor ordering him to pay a surcharge of $100 per year and warning that failure to pay would lead to suspension of his license.

On January 2, 2014, Miller and two other plaintiffs filed a Second Amended Class Action Complaint, the operative complaint in this case. The plaintiffs also moved for class certification. The complaint named as

No. 14-20763

defendants the City of Houston, the vendor used by the City to develop ICMS, the Director of DPS, the Clerk of Court/Deputy Director for the City of Houston Municipal Courts, and the private vendor used by DPS to collect surcharges. The complaint alleged violations of due process pursuant to 42 U.S.C. § 1983 and also brought state law claims. The City and the Clerk of Court moved for summary judgment.

On August 7, 2014, the district court granted summary judgment in favor of the City and the Clerk of Court, and denied the motion for class certification as moot because the plaintiffs could not establish the deprivation of a federally protected right. *Fontenot v. City of Houston*, No. 4:12-CV-3503, 2014 WL 3891682, at *5 (S.D. Tex. Aug. 7, 2014). Miller is the only plaintiff who has appealed the district court's summary judgment and he has appealed the judgment only as to the § 1983 claim against the City.[3]

**II.**

We apply *de novo* review to a grant of summary judgment. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vuncannon v. United States*, 711 F.3d 536, 538 (5th Cir. 2013) (per curiam) (quoting FED. R. CIV. P. 56(a)). When reviewing a summary judgment decision, we construe all facts and inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam). "A panel may affirm summary judgment on any ground supported by the record, even if it is

---

[3] The Director of DPS was previously dismissed from the suit due to Eleventh Amendment immunity. *See Fontenot v. McCraw*, 777 F.3d 741 (5th Cir. 2015). Miller does not appeal summary judgment as to the Clerk of Court.

different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks omitted).

## A.

The only claim covered by this appeal is Miller's municipal liability claim against the City based on an alleged violation of his constitutional due process rights. To succeed on a municipal liability claim, a plaintiff must show that some "action pursuant to official municipal policy" caused a constitutional injury. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Miller has failed to offer sufficient evidence to create a triable issue on the first prong.

It is undisputed that the City did not have an "official policy," created by its lawmaking officers, to report Failure to Display convictions as Unlicensed Driver convictions to DPS. Even so, a plaintiff can establish municipal liability by showing that the city had a "custom" that violated the plaintiff's rights. A plaintiff must present evidence of a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). Miller argues that the City had a "persistent, widespread practice" of misreporting convictions to the State because the City reported Failure to Display as Unlicensed Driver for over six years, which affected nearly 50,000 cases. Miller's argument fails because the

unrefuted record evidence makes clear that the City had no custom to misreport convictions.

Employees of the Houston Municipal Courts Department did not make 50,000 separate decisions to report Failure to Display as Unlicensed Driver. Instead, the undisputed evidence shows that when the electronic ICMS was being implemented, someone made the one-time mistake of linking the City's internal code for Failure to Display with the State's internal Code for Unlicensed Driver. The electronic system took it from there—every time a City employee correctly entered a Failure to Display conviction into ICMS, ICMS incorrectly reported it to DPS as a conviction for Unlicensed Driver. Thus, although the mistake had a large impact, City employees were not engaged in a pattern of improper conduct. "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (quotation marks omitted) (holding that single instance of city failing to correct detective's erroneous identification of suspect could not establish a policy or custom). "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). Despite the wide ranging-consequences, the sole mistake at issue here was similar to the type of clerical error that does not give rise to liability. *See Teaster v. City of Glenpool*, No. 11-CV-257, 2011 WL 2217480, at \*3 (N.D. Okla. June 7, 2011) (holding that plaintiff had failed to state a claim for municipal liability where he had received an enhanced sentence as a result of a clerical error). Furthermore, there is no evidence in the record that any of the City's employees (policymakers or otherwise) knew that convictions were being misreported until 2012, at which time the City took action to correct the issue.

## No. 14-20763

Miller states that the record contains evidence City employees intended to link the City and State codes incorrectly, and that the district court failed to apply the correct summary judgment standard in holding otherwise.  Miller hangs his claim on deposition testimony in which Mr. Billings (the City's Assistant IT Director) said that he "believe[s] that the City of Houston made a decision that led to TP60 [the City's code for Failure to Display] being associated with 3103 [the State's code for Unlicensed Driver]."  Billings's statement, however, was in response to questions of whether the City's vendor had the authority to decide which conviction codes should be linked and whether the mistake had happened from "someone [falling] against a keyboard."  Even when giving Miller the benefit of all reasonable inferences, the record offers no evidence for the proposition that anyone intended convictions to be reported incorrectly to the State.  In fact, Billings stated that any directive to report Failure to Display as Unlicensed Driver would have been *contrary* to the policy of the Municipal Courts Department.  All of the record testimony supports the City's position that the misreporting was caused by an inadvertent mistake during the transition to ICMS.[4]  Miller has thus failed to create a fact issue on whether the City had an official policy or custom to misreport convictions, which dooms his municipal liability claim.  Since Miller has proffered insufficient evidence to survive summary judgment on the first prong of the conjunctive test for municipal liability, we need not consider his evidence on the two remaining prongs.  *See Valle*, 613 F.3d at 541-42.

---

[4] Miller also highlights evidence that the City prosecutor's office had a preference for trying defendants on charges of Failure to Display rather than Unlicensed Driver, because the former offense was easier to prove in court.  It is not clear how this is relevant.  A preference for trials on Failure to Display does not suggest that the City had a custom of misreporting convictions to the State.

No. 14-20763

## B.

After determining that the City was entitled to summary judgment, the district court correctly denied Miller's motion for class certification as moot. *Fontenot v. City of Houston*, 2014 WL 3891682, at \*5.  Since Miller has not created a genuine dispute of material fact on municipal liability, the putative class cannot be certified on that claim either.  *See Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 526 (5th Cir. 2002).

## III.

Miller has not presented enough evidence to create a genuine dispute of material fact as to whether the City had an official policy or custom to misreport convictions.  For this reason, we AFFIRM the district court's grant of summary judgment and its denial of Miller's motion for class certification.