

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00093-CV

_____

JESSICA GROWDEN, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED, Appellant

V.

GOOD SHEPHERD HEALTH SYSTEM, THE GOOD SHEPHERD HOSPITAL, INC.,
AND GOOD SHEPHERD MEDICAL CENTER, Appellees

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 2016-647-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Chief Justice Morriss

OPINION

When Jessica Growden took her minor daughter to the emergency room at Good Shepherd Medical Center (Good Shepherd)[1] in Longview, she signed a form contract that included a clause in which she acknowledged that she was "responsible for the total charges for services rendered." About one month later, Growden received a statement from Good Shepherd charging her $25,308.92 for her daughter's brief stay[2] at the emergency room and demanding that she pay the total amount due within thirty days. Feeling that those charges substantially exceeded the reasonable value of the services provided, Growden, who was uninsured, filed suit on behalf of herself, and others similarly situated, seeking a declaratory judgment that Good Shepherd's contract permits it to bill for, and to collect, only the reasonable value of the treatment it provided, and that she and others similarly situated are liable for only the reasonable value of the services provided by Good Shepherd. After Good Shepherd unconditionally waived and wrote off all of Growden's bill, and before a class was certified, the trial court dismissed the suit for lack of subject-matter jurisdiction.

In this appeal, Growden asserts that the trial court's dismissal of her suit should be overturned because the trial court erred in two ways: (A) ruling that her class-action claims were mooted by Good Shepherd's unilateral act to resolve her individual underlying claim and (B) not

---

[1]In addition to Good Shepherd Medical Center, Growden filed suit against Good Shepherd Health System and The Good Shepherd Hospital, Inc. The Defendants below, appellees in this Court, will be referred to collectively as Good Shepherd.

[2]Growden alleges that her daughter's stay lasted a few hours, and Good Shepherd affirms that it treated her daughter only on February 2, 2016, and that it provided emergency services necessary to assess the injuries sustained by Growden's daughter.

2

recognizing that her claim for attorney fees under the Declaratory Judgments Act[3] (the DJA) survived the resolution of her individual underlying claim. We agree. We reverse the trial court's judgment dismissing Growden's class-action claims and her claim for attorney fees and remand those claims to the trial court for further proceedings. We reach these results because (1) the mooting of Growden's individual underlying claims did not moot her class-action claims and (2) Growden's claim for attorney fees survived any mootness problem.

*(1)    The Mooting of Growden's Individual Underlying Claims Did Not Moot Her Class-Action Claims*

Growden originally sued Good Shepherd seeking only a declaratory judgment under the DJA. She alleged that the contract she signed when she presented her daughter for treatment at Good Shepherd provided that she was "responsible for the total charges for services rendered." She also alleged that, about a month later, she received a statement from Good Shepherd charging her $25,308.92 for her daughter's emergency room treatment and demanding that it be paid within thirty days. Growden, who was uninsured, alleged that those charges were based on Good Shepherd's "Chargemaster" rates that were substantially higher than the charges for the same services for commercially insured patients and for patients covered by Medicare, Medicaid, or workers' compensation. She sought a declaratory judgment on behalf of herself and a class of all persons similarly situated[4] that Good Shepherd's billing practices as they relate to the putative

---

[3]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015).

[4]Growden alleged that the putative class consisted of "[a]ll citizens of Texas who were provided emergency care (*i.e.*, not scheduled or elective services) at a Good Shepherd Hospital or emergency room in Texas, whose bills were not paid in whole or part by commercial insurance or a governmental healthcare program, and who did not have their bills unconditionally waived or written off in full by [Good Shepherd]."

3

class members were unfair, unconscionable, and/or unreasonable; that Good Shepherd's contract did not permit it to bill and demand payment from her and the putative class members at the Chargemaster rates; and that she and the putative class members were liable for only the reasonable value of the services provided by Good Shepherd. Growden also sought to recover costs and attorney fees on behalf of herself and the putative class members. Two days after filing her petition, Growden filed a motion for class certification and a request for a scheduling order.

Almost eleven months after Growden filed her petition, Good Shepherd sought to dismiss Growden's suit for lack of jurisdiction. Good Shepherd claimed that Growden's suit had become moot because she paid nothing for the emergency care for her daughter and because it had waived and written off the charges. Good Shepherd attached the affidavit of its agent, who averred that neither Growden nor her daughter had paid anything for the services provided to her daughter, that Good Shepherd had written off Growden's bills, and that it would make no further attempts to collect the bills.[5] After Growden pointed out that Good Shepherd had merely written off her bills and challenged the sufficiency of that action to moot her claims, Good Shepherd filed another affidavit of its agent, who further averred that Good Shepherd had unconditionally waived and written off Growden's bills and that it did not report her unpaid bills as uncollectable bad debt to any credit agency.[6] After a hearing and additional briefing by the parties, the trial court granted Good Shepherd's Motion to Dismiss.

---

[5]On the same day, Good Shepherd filed its response to Growden's motion to compel responses to requests for production and interrogatories. Attached to that pleading is an affidavit that is identical to the affidavit attached to Good Shepherd's Motion to Dismiss for lack of jurisdiction.

[6]At oral argument, Growden agreed that this was sufficient to moot her individual underlying claim.

Growden complains that the trial court should not have found that Good Shepherd's unconditional waiver of her hospital bills mooted her class-action claims. She asks us to apply what has been called the picking-off exception to the mootness doctrine[7] and argues that her standing should relate back to the date she filed her petition, before Good Shepherd waived her bills. Although Growden acknowledges that the Texas Supreme Court has not adopted the picking-off exception, she cites various federal cases that have recognized the exception and analogizes the exception to the inherently transitory exception that *has* been adopted by the Texas Supreme Court. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 161 (Tex. 2012).

Before a court may exercise subject-matter jurisdiction, a plaintiff must have standing. *See Abbott v. G.G.E.*, 463 S.W.3d 633, 646 (Tex. App.—Austin 2015, pet. denied) (citing *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 739 (Tex. App.—Austin 2014, pet. dism'd)). If a plaintiff lacks standing to assert a claim, then a court has no jurisdiction to hear it. *Heckman*, 369 S.W.3d at 150; *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). To have standing, the plaintiff "must have suffered a 'concrete injury[,]' and a 'real controversy' must exist between the parties such that it can be resolved by the court." *In re Estate of Forister*, 421 S.W.3d 175, 177 (Tex. App.—San Antonio 2013, pet. denied) (quoting *Heckman*, 369 S.W.3d at 154). This standing requirement applies to each claim asserted by a plaintiff. Thus, a court must dismiss a claim if the plaintiff lacks standing to assert it, and it must dismiss the entire action for want of jurisdiction if the plaintiff lacks standing to assert any of its claims. *Heckman*, 369 S.W.3d at 150–

---

[7]*See, e.g.*, *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. 1981).

5

51. In addition, a plaintiff who seeks a declaratory judgment must show an actual or threatened injury and that the declaration sought will resolve the controversy. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004); *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex. 2001). If she cannot show an actual or threatened injury, then her claims for a declaratory judgment must be dismissed. *Novak*, 52 S.W.3d at 707–08.

Requirements of standing apply to class actions as well. *Heckman*, 369 S.W.3d at 151 (citing *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 915 (Tex. 2010)). A class-action plaintiff "must still prove that [s]he individually ha[s] standing to sue." *Id.* (citing *Novak*, 52 S.W.3d at 710). If she has standing on some claim individually, then she "has standing to pursue class certification as to that claim." *Id.* at 154. Standing is a threshold issue that the court must consider "before reaching the separate issue of whether it can certify the putative class." *Id.* at 151 (citing *Novak*, 52 S.W.3d at 710). "[I]f the named plaintiff lacks individual standing, the court should dismiss the entire suit for want of jurisdiction." *Novak*, 52 S.W.3d at 711.

Just as a court may not decide a case when a plaintiff lacks standing, neither can it decide a case that has become moot during the course of the litigation. *Heckman*, 369 S.W.3d at 162 (citing *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999)). "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id.* (citing *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). In other words, if the court's ruling on the merits can no longer affect the parties' rights or interests, the case is moot. *Id.* (citing *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993)

6

(per curiam)).  When a case becomes moot, the court is required to "vacate any order or judgment previously issued and dismiss the case for want of jurisdiction."  *Id.* (citing *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229–30 (Tex. 1993)).  Whether a plaintiff's claims have become moot is a question of law that we review de novo.  *Id.* at 149–50 (citing *Speer*, 847 S.W.2d at 229).

In this case, Growden had been billed by Good Shepherd for the services it rendered to her daughter in an amount that Growden contends exceeded the reasonable value of those services.  Thus, initially Growden could show a threatened injury that could be resolved by her requested declaration that, under Good Shepherd's contract, she was liable for only the reasonable value of the services rendered.  Therefore, at the time she filed her petition and motion for certification of a class action, Growden had standing to bring her declaratory judgment action.  *See Brooks*, 141 S.W.3d at 163–64; *Novak*, 52 S.W.3d at 707–08.  It is undisputed, however, that Growden did not pay any part of the bill and that Good Shepherd has now unconditionally waived Growden's bill.  Consequently, Growden can no longer show an actual or threatened injury on her underlying claim, and any controversy between Good Shepherd and Growden as to that claim has been extinguished.  Further, no requested declaration would provide any relief to Growden or affect the legal relations of the parties and thus would be advisory.  *See Houston Chronicle Pub. Co. v. Thomas*, 196 S.W.3d 396, 401 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  Since Growden's underlying claims have become moot, she no longer has standing to assert her individual declaratory judgment claims.  *See Heckman*, 369 S.W.3d at 162; *Thomas*, 196 S.W.3d at 401.  Therefore, dismissal of her underlying individual claim was proper.

7

However, Growden also asserted claims on behalf of a class of similarly situated persons. Generally, when the individual claims of a named plaintiff have been satisfied before a class has been certified, the purported class action must also be dismissed for mootness. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. 1981). But in some circumstances, a named plaintiff's interest may become moot without affecting the class' interest in the suit. *Heckman*, 369 S.W.3d at 162. Because of the tension created when a class of plaintiffs continues to have a live claim against the defendant in spite of the mooting of the named plaintiff's individual claim, courts have recognized certain exceptions to the mootness doctrine in class-action lawsuits. *Id.*

The Texas Supreme Court has recognized several exceptions to the mootness doctrine in the class-action context, and it has adopted the inherently transitory exception.[8] *Id.* at 161 (citing *Novak*, 52 S.W.3d at 708–09) (discussing, but not applying, exception adopted by United States Supreme Court in *Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975));[9] *see also Williams*, 52 S.W.3d at

---

[8]The inherently transitory exception applies in those cases in which (1) any individual plaintiff's claim is by its nature of short duration, and (2) there is likely a "continuing class of persons suffering the same alleged harm as the named plaintiff." *Heckman*, 369 S.W.3d at 164–65.

[9]In *Sosna*, the plaintiff challenged Iowa's law requiring persons to be residents of Iowa for at least one year before filing a petition for divorce. *Sosna*, 419 U.S. at 395–96. Sosna obtained class certification to represent residents of Iowa who had resided therein for less than one year and who desired to file suits for the dissolution of marriage. *Id.* at 397. While the case was on appeal, Sosna met the residency requirement, and her individual claim became moot. *Id.* at 398. The parties stipulated that there were many people in Iowa in the same situation as Sosna. *Id.* at 397. The court noted that, while Sosna's individual claim was mooted by the passage of time, the other class members remained aggrieved by the statute. In such a situation, the court held that the class claims would not become moot. *Id.* at 401. The court also cautioned that, "[i]n cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Article III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Id.* at 402. In *Heckman*, the court noted that *Sosna* is among those federal cases in which when the named plaintiff's individual claims become moot after the court has ruled on certification, the class action as a whole will generally not become moot. *Heckman*, 369 S.W.3d at 163 n.135. The court also noted that, if the individual claims become moot before a ruling on certification, "the suit can survive only if another exception to mootness applies." *Id.*

8

184 (discussing, but not applying, "capable of repetition, yet evading review" exception[10] to mootness doctrine); *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571–72 (Tex. 1990) (discussing, but not applying, "collateral consequences" exception[11] to mootness doctrine). We have not found any case in which the Texas Supreme Court or a Texas court of appeals has recognized the picking-off exception to the mootness doctrine. However, because "federal courts have extensively explored mootness in the class action context and have developed a body of exceptions," we look to "their decisions for guidance." *Heckman*, 369 S.W.3d at 163; *see Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000) (Since Rule 23 of the Texas Rules of Civil Procedure is patterned after Rule 42 of the Federal Rules of Civil Procedure, "federal decisions and authorities interpreting current federal class action requirements are persuasive in Texas actions.").

A majority of federal courts of appeal have recognized the picking-off exception to the mootness doctrine. *See, e.g.*, *Unan v. Lyon*, 853 F.3d 279, 285–86 (6th Cir. 2017); *Richardson v. Bledsoe*, 829 F.3d 273, 285–86 (3rd Cir. 2016); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704–05 (11th Cir. 2014); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015); *Pitts*

---

[10]For this exception to apply, the plaintiff must show that: "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Lara*, 52 S.W.3d at 184 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

[11]This exception may apply when "prejudicial events have occurred 'whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate. Such effects were not absolved by mere dismissal of the cause as moot.'" *OXY U.S.A., Inc.*, 789 S.W.2d at 571 (quoting *Spring Branch I.S.D. v. Reynolds*, 764 S.W.2d 16, 19 (Tex. App.—Houston [1st Dist.] 1988, no writ)). Further, it is generally "used to challenge unconstitutional acts performed by the government." *Id.*

*v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249–50 (10th Cir. 2011); *Zeidman*, 651 F.2d at 1049–51; *White v. Matthews*, 559 F.2d 852, 856–57 (2nd Cir. 1977). "The 'picking-off' exception was developed to prevent defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that 'would be contrary to sound judicial administration.'" *Unan*, 853 F.3d at 285 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). This exception expands the relation-back doctrine recognized by the United States Supreme Court in *Sosna*.

As previously noted, Sosna's individual claim challenging Iowa's residency requirement became moot after the trial court certified the class because, by the passage of time, Sosna met the residency requirement. *Sosna*, 419 U.S. at 397–98. Noting that the parties had stipulated that there were numerous people in the state of Iowa in the same situation as plaintiff, the court reasoned that, when the class was certified, "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by" Sosna. *Id*. at 399. Since Sosna had a case or controversy with Iowa when she filed the lawsuit and when the class was certified, and since at least one unnamed member of the class represented by Sosna had a controversy with Iowa after certification, the subsequent mooting of her individual claim would not moot the class claims or deprive Sosna of standing to represent the class. *Id*. at 401–02. Rather, Sosna's standing to bring the class claims, and to represent the class, related back to when the class was certified. In a subsequent case, the United States Supreme Court applied this same reasoning in a case in which the trial court wrongfully denied class certification, and while on appeal the

10

named plaintiff's claim became moot. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980). In both of these cases, the named plaintiff's individual claim became moot after the trial court ruled on class certification.

The Fifth Circuit has noted that the United States Supreme Court has subsequently applied the relation-back doctrine to class-action cases in which the individual claims were inherently transitory. *Fontenot v. McCraw*, 777 F.3d 741, 749 (5th Cir. 2015) (citing *Swisher v. Brady*, 438 U.S. 204 (1978) (challenging juvenile delinquency procedures); *Gerstein v. Pugh*, 420 U.S. 103 (1975) (challenging constitutionality of pretrial detentions)). In both of these cases, the plaintiffs' individual claims were mooted before a ruling on class certification. *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978); *Gerstein v. Pugh*, 420 U.S 103, 110 n.11 (1975). Thus, at least in cases in which the individual claims are inherently transitory, the United States Supreme Court has recognized a limited exception to the general federal rule that, when the named plaintiff's individual claims are mooted before the class is certified, the entire case is moot and must be dismissed. *See Fontenot*, 777 F.3d at 749; *Zeidman*, 651 F.2d at 1045.

Relying principally on *Sosna*, *Swisher*, and *Pugh*, the Fifth Circuit (as well as several other federal courts of appeal) expanded the relation-back doctrine to those cases in which the defendant "picks off" the named plaintiffs by voluntarily satisfying their individual claims before the trial court's ruling on class certification. *Zeidman*, 651 F.2d at 1045–51. In *Zeidman*, the plaintiffs sued a group of investment bankers, alleging that they engaged in an unlawful scheme to manipulate downward the market price of Babcock & Wilcox Co. (B&W) during a battle for control of B&W. They sued on behalf of themselves and others who sold B&W stock and options

11

during this period. *Id.* at 1033. Two months after filing suit, the plaintiffs moved to certify their class action. *Id.* at 1033–34. Seven months later, the district court issued a decision that all the prerequisites had been met, except numerosity, and went on to reduce the size of potential classes sought to be represented, but left the numerosity issue unresolved. *Id.* at 1034–35. In response, the plaintiffs gathered additional evidence addressing the numerosity issue and filed it with the district court one week after its initial opinion. *Id.* 1035. Two hours later, the defendants tendered the full amount of the named plaintiffs' individual claims and moved the district court to dismiss the suit as moot. Although the plaintiffs refused to accept the tender, the district court dismissed the entire suit. *Id.* at 1036.

On appeal, the Fifth Circuit noted that the United States Supreme Court had recognized that the relation-back doctrine may apply when the named plaintiff's claims become moot before the trial court has a reasonable opportunity to rule on certification. *Id.* at 1046–47. It pointed to a footnote in *Sosna* which stated:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend on the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Id.* at 1047 (quoting *Sosna*, 419 U.S. at 402 n.11). The court of appeals then looked to *Swisher* and *Pugh* in which the United States Supreme Court applied the relation-back doctrine to cases involving claims that "by their nature are transitory." *Id.* at 1048–49. While acknowledging that the plaintiffs' claims in *Zeidman* were not inherently transitory, the court of appeals reasoned:

12

> [T]he result should be no different when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification. By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached.

*Id.* While acknowledging that this tactic may not always be financially feasible, the Fifth Circuit pointed out that, in those cases in which it is used, the defendant could prevent a viable class action from ever reaching certification, which is what the relation-back doctrine was intended to prevent. *Id.*[12]

Thus, the Fifth Circuit and other federal courts have recognized, at least in some instances, a picking-off exception to the mootness doctrine when the defendant satisfies the named plaintiff's individual claim as a part of its litigation strategy. To determine whether the record supports an inference that the satisfaction of the named plaintiff's claim is a litigation strategy employed by the defendant, the courts have considered a couple of factors. These factors include (1) when the defendant satisfied the named plaintiff's claim[13] and (2) whether the satisfaction resulted from the standard operating procedure of the defendant, rather than a new ad hoc procedure.[14]

---

[12] We also note that, by relating the standing determination back to when the named plaintiff filed her motion to certify the class, the picking-off exception furthers the purposes of a class action to "eliminate or reduce the threat of repetitive litigation," "prevent inconsistent resolution of similar cases," and "provide an effective means of redress for individuals whose claims are too small to make it economically viable to pursue them in independent actions." *Sheldon*, 22 S.W.3d at 453 (quoting THE AMERICAN LAW INSTITUTE, REPORT: PRELIMINARY STUDY OF COMPLEX LITIGATION 35 (1987)); *see also Pitts*, 653 F.3d at 1091.

[13] *See, e.g.*, *Unan*, 853 F.3d at 286 (satisfied claim only after motion to certify filed in spite of notice of claim five months before suit filed); *Wilson v. Gordon*, 822 F.3d 934, 950–51 (6th Cir. 2016) (satisfaction of claim on eve of certification hearing); *Zeidman*, 651 F.2d at 1036 (same).

[14] *See Unan*, 853 F.3d at 286; *Wilson*, 822 F.3d at 950.

Additionally, in *Zeidman*, the Fifth Circuit indicated the application of the picking-off exception would apply to those cases in which, at the time of the mooting of the named plaintiff's individual claim, "there is pending before the district court a timely filed and diligently pursued motion for class certification." *Id.* at 1051. More recently, the Fifth Circuit has indicated that a named plaintiff may avoid being picked off by filing a motion to certify early in the suit. *Fontenot*, 777 F.3d at 750. Five other federal circuit courts also agree that the picking-off exception will apply when the named plaintiff has timely filed a motion to certify that is pending before the trial court at the time of the mooting of the named plaintiff's individual claims. *See Unan*, 853 F.3d at 285; *Richardson*, 829 F.3d at 286; *Damasco*, 662 F.3d at 896; *Lucero*, 639 F.3d at 1249; *White*, 559 F.2d at 856–57.[15] Two circuits, echoing the language of the footnote in *Sosna*, apply the picking-off exception if the named plaintiff's individual claim is mooted before the trial court can reasonably be expected to rule on class certification, if a timely motion to certify may still be filed. *See Pitts*, 653 F.3d at 1092; *Stein*, 772 F.3d at 704–05.

In this case, Growden's timely filed motion to certify was pending before the trial court when Good Shepherd waived her medical bill. Although there is no indication in the record that a hearing on the motion to certify had been set, Good Shepherd waived the bill only after Growden had sought discovery from it regarding her class claims and had filed a motion to compel Good Shepherd to fully answer her discovery requests. Further, although Good Shepherd claimed in a letter brief to the trial court that it had made the decision to waive Growden's bill only after

---

[15]The First Circuit Court of Appeals has left open the question of whether to recognize a picking-off exception, but has indicated that, at a minimum, for it to apply there must be a motion to certify pending at the time the individual plaintiff's claim is mooted. *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 51 (1st Cir. 2015).

unanswered attempts to work with her to find alternative sources of funding, it submitted no evidence supporting its claims or showing that the waiver of her bills was the result of its standard operating procedures. However, Growden submitted a copy of Good Shepherd's Policy/Procedure regarding patient bills to the trial court, attached to her reply letter brief. Under Section 5, entitled "Bad Debt," the policy provides that self-pay balances that meet certain criteria will be written off as bad debt and that the "accounts will be placed with a collection agency for further collection efforts." No provision under this section authorizes the medical bill to be unconditionally waived, as happened in this case. Therefore, it appears that Good Shepherd's waiver of Growden's medical bill was not pursuant to any standard policy or procedure, but rather a strategic, ad hoc decision unique to this case. Consequently, it is reasonable to infer from this record that Good Shepherd's waiver of Growden's medical bill was based on a litigation strategy employed by it in an effort to dispose of this action.

Based on this record, and following well-established federal law,[16] we find that the picking-off exception to the mootness doctrine applies in this case and that the trial court erred in dismissing Growden's class-action claims.

---

[16]While the Fifth Circuit has questioned whether the picking-off exception it applied in *Zeidman* remains viable in light of the 2013 United States Supreme Court decision in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013), it concluded that "*Genesis Healthcare* does not foreclose the broader *Zeidman* approach to relation back doctrine." *Fontenot*, 777 F.3d at 750. Other federal courts of appeal considering *Genesis Healthcare* have reached similar conclusions. *Wilson*, 822 F.3d at 949; *Stein*, 772 F.3d at 709; *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 875–76 (9th Cir. 2014), *aff'd on other grounds sub nom. Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016).

15

*(2)     Growden's Claim for Attorney Fees Survived any Mootness Problem*

Regardless of the foregoing issue, Growden also contends that the trial court erred in dismissing her claim for attorney fees. She argues that, since her claims were brought under the DJA, her claim for attorney fees remains live, even if her substantive claims under the DJA became moot. Initially we note that, since we have held that the trial court erred in dismissing Growden's class claims, her claim for attorney fees related to her class claims was also erroneously dismissed. We also agree that Growden's individual claim for attorney fees under the DJA remain live.

In a proceeding brought under the DJA, the trial court has discretion to award attorney fees that are equitable and just. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.009). Under the DJA, there is no requirement that a party prevail in the proceeding in order to recover attorney fees. *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 773 (Tex. App.—Dallas 2011, no pet.) (citing *Martin v. Cadle Co.*, 133 S.W.3d 897, 906–07 (Tex. App.—Dallas 2004, pet. denied)). The Texas Supreme Court has held that, in a case brought under the DJA, a claim for attorney fees remains a live controversy, even if the substantive claims under the DJA become moot during the pendency of the case. *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *see Hallman*, 159 S.W.3d at 642.

In this case, Growden sought only declaratory relief and attorney fees under the DJA. Although her individual substantive claims under the DJA have become moot, her individual claim for attorney fees under the DJA remains live. *See Camarena*, 754 S.W.2d at 151. Even though Growden could not be a prevailing party on her individual claims since declaratory relief is not

16

available,[17] the trial court in its discretion may determine that awarding her attorney fees would be equitable and just, given that her underlying claims were mooted only after she filed suit.[18] Since Growden could still be awarded attorney fees if the trial court found it would be equitable and just, her claim for attorney fees could not be dismissed. *See Hansen*, 346 S.W.3d at 774–75. Therefore, we find that Growden's individual claim for attorney fees under the DJA should not have been dismissed.

---

[17]*See Speer*, 847 S.W.2d at 229–30.

[18]On appeal, Good Shepherd does not dispute that Growden's claim for attorney fees under the DJA remained live after her substantive DJA claims became moot. Rather, it argues that, since the trial court's order does not state the basis of its ruling, we should imply that the trial court found that it was not equitable and just to award attorney fees to Growden. Good Shepherd relies heavily on *Progressive Child Care Systems., Inc. v. Legacy Village Limited Partnership*, No. 05-15-01009-CV, 2016 WL 7166420 (Tex. App.—Dallas Dec. 5, 2016, no pet.) (mem. op.). However, in *Progressive Child Care*, Progressive filed suit against Legacy contending Legacy's leases with third parties violated a restrictive covenant and requested damages and declaratory and injunctive relief. *Id.* at *1. Legacy filed a motion for summary judgment asserting that there was no evidence of damages to Progressive and arguing that Progressive's other claims were moot, waived, or barred by laches. The trial court granted Legacy's motion, ordering that Progressive take nothing on its claims, and that Legacy should recover its attorney fees. After a trial at which the parties stipulated as to the amount of Legacy's attorney fees, the trial court entered its final judgment that incorporated its summary judgment on Progressive's claims and awarded Legacy the stipulated attorney fees. *Id.* at *2. On appeal, Progressive contended that the trial court erred in dismissing its declaratory relief because its claim for attorney fees remained live. The court of appeals agreed that the claim for attorney fees did not become moot simply because Progressive's request for declaratory relief became moot. However, it overruled Progressive's complaint because there was nothing in the record that indicated the trial court dismissed Progressive's claim for attorney fees as moot, and it noted that, under the DJA, the trial court in its discretion may decline to award attorney fees to any party. *Id.* at *5. Thus, because neither the summary judgment nor the final judgment stated the basis for the trial court's judgment, the court of appeals could imply that the trial court made all of the necessary findings to support its judgment.

By contrast, this case is an appeal from the granting of Good Shepherd's motion to dismiss that asserted Growden's claims had become moot. In its motion, Good Shepherd asked for the dismissal of the entire suit, arguing that all of her claims were moot. Good Shepherd asserts in its brief that it urged the trial court in subsequent filings to deny Growden's claim for attorney fees under the DJA as not equitable and just. However, an examination of those filings, as well as its argument at the hearing on its motion, reveals that Good Shepherd consistently argued only that the trial court should dismiss the attorney fees claim as moot. Good Shepherd asserted several bases in support of its argument, including that it was equitable and just. In its order, the trial court granted Good Shepherd's motion to dismiss, which requested the dismissal of the entire suit as moot. We find nothing in this record to support any conclusion other than that the trial court dismissed all of Growden's claims, including her claims for attorney fees, as moot.

For the reasons stated, we reverse the trial court's dismissal of Growden's class-action claims, including her claim for attorney fees related to those claims, reverse the trial court's dismissal of Growden's individual claim for attorney fees, and remand this matter to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

Josh R. Morriss III
Chief Justice

Date Submitted: April 4, 2018
Date Decided: May 9, 2018