IN THE SUPREME COURT OF NORTH CAROLINA

No. 147PA18

Filed 5 June 2020

CHRISTOPHER CHAMBERS, on behalf of himself and all others similarly situated

v.

THE MOSES H. CONE MEMORIAL HOSPITAL; THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION d/b/a MOSES CONE HEALTH SYSTEM and d/b/a CONE HEALTH; and DOES 1 through 25, inclusive

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 259 N.C. App. 8, 814 S.E.2d 864 (2018), affirming an order entered on 16 March 2017 by Judge James L. Gale, Chief Business Court Judge, in Superior Court, Guilford County. Heard in the Supreme Court on 18 November 2019 in session in the Old Guilford County Courthouse in the City of Greensboro, pursuant to section 18B.8 of Chapter 57 of the 2017 North Carolina Session Laws.

*Higgins Benjamin, PLLC, by John F. Bloss, for plaintiff-appellant.*

*Womble Bond Dickinson, LLP, by Philip J. Mohr and Brent F. Powell, for defendant-appellees The Moses H. Cone Memorial Hospital and The Moses H. Cone Memorial Hospital Operating Corporation.*

*Patterson Harkavy LLP, by Burton Craige; and Carol L. Brooke, Jack Holtzman, and Clermont F. Ripley for North Carolina Justice Center, Center for Responsible Lending, and North Carolina Advocates for Justice, amicus curiae.*

*Joshua H. Stein, Attorney General, by Ryan Y. Park, Deputy Solicitor General, Daniel T. Wilkes, Assistant Attorney General, and Matthew C. Burke, Solicitor General Fellow, for the State of North Carolina, amicus curiae.*

*Linwood Jones for North Carolina Healthcare Association, amicus curiae.*

EARLS, Justice.

Christopher Chambers and his wife were sued in May 2012 by The Moses H. Cone Memorial Hospital Operating Corporation seeking collection of $14,358.14 plus interest, allegedly owed for emergency room services. Around the same time, Christopher Chambers filed a class action complaint against The Moses H. Cone Memorial Hospital and The Moses H. Cone Memorial Hospital Operating Corporation (Moses Cone) seeking a declaratory judgment that the contract he signed as an uninsured patient needing emergency medical treatment entitled Moses Cone to recover no more than the reasonable value of the services it provided. We must now decide whether Moses Cone's subsequent, unilateral action dismissing its claims against Chambers and his wife and ceasing all other attempts to collect the debt, prior to certification of the class in Chambers's declaratory judgment action, renders the entire class action moot. Following the logic of the Third Circuit Court of Appeals decision in *Richardson v. Bledsoe*, 829 F.3d 273 (3d Cir. 2016), we hold that the relation back doctrine "may be applied to relate a now-moot individual claim back to the date of the class action complaint" when the event that moots the plaintiff's claim occurs before the plaintiff has had a fair opportunity to seek class certification and provided that the plaintiff has not unduly delayed in litigating the motion for class certification. *Id.* at 285. Therefore, "when 'satisfaction of the plaintiff's individual

claim [occurs] before the court can reasonably be expected to rule on the class certification motion,' the plaintiff's stake in the litigation is not extinguished," and the case is not moot. *Id.* (quoting *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011)).

## I.     Factual Background

On or about 23 August 2011, Chambers was treated at Moses Cone's emergency room where he underwent an emergency appendectomy.   He was uninsured at the time. In his complaint, Chambers alleged that the $14,358.14 he was charged by Moses Cone (separate from independent physicians' and other non-hospital charges) was "far more than the payment amount required from the vast majority" of Moses Cone's patients receiving similar services, and he alleged that the bill was grossly excessive, out of proportion to Moses Cone's actual cost, and much greater than the reasonable value of such services.

Chambers sought to bring this action on behalf of a class, defined as follows:

> All individuals (or their guardians or representatives) who within four years of the date of the filing of the Complaint in this action and through the date that the Court certifies the action as a class action (a) received emergency care medical treatment at Moses H. Cone Memorial Hospital or another Cone Health Hospital; (b) whose bills were not paid in whole or part by commercial insurance or a governmental healthcare program; and (c) who were not granted a full discount or waiver under Defendants' charity care policies or otherwise had their bills permanently waived or written off in full by Defendants.

According to Moses Cone's standard contract in force at the time Chambers had his

appendectomy, the patient was obligated to pay the Moses Cone's bill "in accordance with the regular rates and terms of Cone Health." Chambers contended he expected to pay the same as other emergency care patients who sign the same contract but that, as an uninsured patient, he was charged 100% of Moses Cone's Chargemaster rates, which he alleges are artificial, grossly inflated rates.

Chambers initially filed suit on 11 May 2012. Moses Cone filed an answer and counterclaim on 3 August 2012 denying all class allegations, asserting seventeen affirmative defenses, bringing counterclaims against Chambers and his wife seeking compensatory damages and attorneys' fees, and asking the trial court to consolidate the action with Moses Cone's original lawsuit seeking payment of the $14,358.14 bill. Shortly after Moses Cone filed its answer and counterclaim, Robin D. Hayes sought to intervene as a plaintiff, individually and as a class representative. More than a year later, on 27 September 2013, the trial court ordered that "further consideration of the [m]otion [to intervene] should be delayed until after the Court rules on Plaintiff's motion for class certification." On 2 July 2014, the case was assigned to a new judge and thereafter a status conference was held "at which the parties agreed to . . . stay further proceedings in this case until the Court issued an opinion on related matters in *Hefner v. Mission Hosp., Inc.*, No. 12 CVS 3088." The plaintiff's claims in *Hefner* eventually were ruled moot when the defendant hospital in that case "unequivocally bound itself to seek no payment" of its bill from the plaintiff. This case then was reactivated, and Chambers filed an Amended Class Action Complaint.

Moses Cone then dismissed its claims for the remainder of its bill and on the following day, filed a motion to dismiss the case. The trial court granted the motion to dismiss on 16 March 2017 and, citing *Hefner*, noted that "[s]imilar to the hospital defendant in *Hefner*, Moses Cone has voluntarily dismissed with prejudice its collection action against Chambers, meaning that Moses Cone has no right to recover any additional payments from Chambers." In addition, the trial court went on to deny Hayes' motion to intervene, leaving no plaintiff to maintain the class action claims.

Chambers filed a notice of appeal, and the Court of Appeals affirmed the trial court's order dismissing the case. *Chambers v. Moses H. Cone Mem'l Hosp.*, 259 N.C. App. 8, 13, 814 S.E.2d 864, 869 (2018). The Court of Appeals concluded that because Chambers' bill was permanently waived, he was no longer a member of the proposed class and, therefore, it was appropriate to apply the general rule that an appeal presenting a question that has become moot will be dismissed. *Id.* at 12, 814 S.E.2d at 868. Because the class had not yet been certified and the sole class representative no longer had "a genuine personal interest in the outcome of the case," the Court of Appeals concluded that it "need not determine if the class action is now moot based on the conduct of Moses Cone or the public interest." *Id.* at 13, 814 S.E.2d at 868. This Court granted discretionary review pursuant to N.C.G.S. § 7A-31 (2019).

Chambers' original class action complaint alleged that uninsured patients receiving emergency medical care at Moses H. Cone Memorial Hospital or another Cone Health hospital who were charged 100% of the hospital's Chargemaster rates

numbered "at least hundreds, if not thousands, of persons." Chambers further alleged (1) that there were questions of law and fact common to the class, which predominate over any questions affecting only individual class members; (2) that he will fairly and adequately represent the interests of the class; and (3) that a class action is the superior method for the fair and efficient adjudication of the claims. The complaint asserted the following:

> Most losses are modest in relation to the expense and burden of individual prosecution of the litigation necessitated by the Defendants' wrongful conduct. It would be virtually impossible for the Class members to efficiently redress their wrongs individually. Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments. Individualized litigation would also magnify the delay and expense to all parties and the court system presented by the issues of the case.

However, before these allegations could be tested at the class certification stage, Moses Cone sought to end the litigation by dismissing its claims against Chambers and suspending its attempts to collect the debt it alleged was owed by Chambers and his wife for the emergency appendectomy.

## II.    Class Action Context

Class action lawsuits have long been a feature of our justice system. The class action lawsuit originated in the middle ages. *See Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 948 (E.D. Tex. 2000) (tracing the history of class actions). "In

order to facilitate the adjudication of disputes involving common questions and multiple parties in a single action, the English Court of Chancery developed the bill of peace." 7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil* § 1751 (3d ed. 1986). The English bill of peace became the basis for class actions in the United States, including North Carolina's early class action decisions in the late 1800's. *See Bronson v. Wilmington N.C. Life Ins. Co.*, 85 N.C. 411, 414 (1881) (describing the class action mechanism as a feature of civil procedure, citing Joseph Story's treatise on English equity jurisprudence).

Thus, it is well-established that class actions can be an efficient and fair way to resolve in one case disputes that may affect a large number of people. *Maffei v. Alert Cable TV of N.C., Inc.*, 316 N.C. 615, 620, 342 S.E.2d 867, 871 (1986); *see also Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 284, 354 S.E.2d 459, 466 (1987) (stating that class actions serve many purposes, including "preventing a multiplicity of suits or inconsistent results"); *Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 216, 794 S.E.2d 699, 710 (2016) (same). By consolidating numerous individual claims with common factual and legal issues into a single proceeding, "the class-action device saves the resources of both the courts and the parties." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982). Moreover, courts have also recognized the deterrent effect of class action lawsuits, which hold defendants accountable for conduct that may be unlawful and widespread but difficult to address when the conduct does not harm any single individual enough to make it economically

expedient to bring a lawsuit. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (explaining that the class action mechanism was designed to overcome the problem that small recoveries do not provide incentive for any single individual to bring an action to vindicate his or her rights); James Grimmelmann, *Future Conduct and the Limits of Class-Action Settlements*, 91 N.C. L. Rev. 387, 421–22 (2013) (explaining the deterrent effect of class action lawsuits on other potential defendants in similar situations).

One potential obstacle to the efficient and equitable administration of the class action procedure occurs when defendants settle the claims of individual plaintiffs prior to class certification and contend that therefore the entire case has become moot. The U.S. Supreme Court described the problem as follows:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Roper*, 445 U.S. at 339. Under federal law, where a named plaintiff's individual claim is mooted after the plaintiff-class has already been certified, it does not moot the entire case. *See Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975). Similarly, even where class certification has been denied, a named plaintiff whose individual claim is moot retains the right to appeal the denial of class certification. *See Roper*, 445 U.S. at

339–40; *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980). The question raised in this case is whether the unilateral action by Moses Cone to moot the named plaintiff's individual claim renders the entire case moot when there has been no discovery or ruling on plaintiff's motion for class certification. The U.S. Supreme Court has not directly resolved this question.

In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the defendant made an offer of judgment to satisfy the named plaintiff's individual claim prior to class certification, which was not accepted by the plaintiff, and then the defendant moved to dismiss the case on mootness grounds. The U.S. Supreme Court held that the plaintiff's class action complaint "was not effaced by [the defendant's] unaccepted offer to satisfy his individual claim." *Id.* at 670. Thus, "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.* at 672. However, "[t]he Supreme Court, therefore, did not need to reach the arguably more difficult question: whether a named plaintiff who did in fact lack a personal stake in the outcome of the litigation could continue to seek class certification even though his claim became moot before filing a motion for class certification." *Richardson*, 829 F.3d at 282. Here, we must decide an issue expressly left open in *Campbell-Ewald*. *See Campbell-Ewald Co.*, 136 S. Ct. at 672 ("We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount.").

Ten federal circuit courts of appeals have reached this arguably more difficult question. Eight of those ten circuits have ruled that when a defendant acts to moot the claims of individual named plaintiffs before the court has ruled on a class certification motion, the entire action is not yet moot, and the named plaintiff retains the representative capacity to pursue class certification and a ruling on the merits.[1] This exception to mootness has been adopted by federal courts because "[i]n recent years, this stratagem [of picking off the named plaintiff] has become a popular way

---

[1] The Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh circuits have some form of a pick off exception to mootness in the class action context. *See Unan v. Lyon*, 853 F.3d 279, 285–86 (6th Cir. 2017) (claims were not moot where government was "picking off" named plaintiffs, retroactively determining them to be eligible for comprehensive Medicaid coverage shortly after lawsuit was filed); *Richardson v. Bledsoe*, 829 F.3d at 284–86 (reviewing federal circuit court precedent and based in part "upon consideration of the well-reasoned approaches of our sister circuits, [ ] reaffirm[ing] the validity of the picking off exception"); *Wilson v. Gordon*, 822 F.3d 934, 947–51 (6th Cir. 2016), *reh'g en banc denied Wilson v. Gordon*, No. 14-6191, 2016 U.S. App. LEXIS 15697 (6th Cir. Aug. 1, 2016) (evidence was sufficient for trial court "to conclude that 'picking off' exception applies in this case"); *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015) (rejecting a claim of mootness because following recent Supreme Court cases, "no one thinks (or should think) that a defendant's offer to have the court enter a consent decree renders the litigation moot and thus prevents the injunction's entry"); *Fontenot v. McCraw*, 777 F.3d 741, 751 (5th Cir. 2015) (pick off exception to mootness applies where class certification motion has been filed even if it has not yet been ruled on); *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 705–07 (11th Cir. 2014) (exception to mootness in class actions applies even where plaintiffs' individual claims become moot before plaintiffs move to certify a class); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (even where plaintiff's claim is not inherently transitory, class certification relates back to the date the case was filed, and the case does not become moot because "a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review"); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249–50 (10th Cir. 2011) (exception to mootness applies where defendant seeks to moot individual claim prior to ruling on class certification); *Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994) (when claims of the named plaintiffs become moot prior to class certification, the case is not moot if circumstances suggest class certification may relate back to filing of the complaint).

to try to thwart class actions." *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 48 (1st Cir. 2015). Even the two circuits that do not explicitly adopt a "pick off" exception to mootness leave open the door to permit a plaintiff whose claims are moot to continue as a class representative under either a "capable of repetition, yet evading review" theory,[2] or when the class certification motion was pending but not ruled on at the time that the plaintiff's claim became moot.[3] The Fourth Circuit Court of Appeals has not yet addressed this issue, but several federal district courts have applied precedent from other circuits to find a "pick off" exception to mootness in putative class action cases. *See, e.g.*, *Reyna v. Fiott*, No. 1:17-cv-01192, 2018 U.S. Dist. LEXIS 123949, at *8 (E.D. Va. Mar. 20, 2018) (holding case not moot, applying relation back doctrine to pick off exception in immigrant detention case following

---

[2] The Eighth Circuit has held that where the defendant acts to moot a named plaintiff's claim in a putative class action, the claim is capable of repetition, yet evading review. *See, e.g.*, *Inmates of Lincoln Intake & Det. Facility by Windes v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir. 1983) ("[A] court may address on appeal the issue of whether the district court ruled properly on the class certification issue, even though the named plaintiff's claim became moot prior to the district court's consideration of the issue."); *Owens v. Heckler*, 753 F.2d 675, 677 (8th Cir. 1985) (holding that the class action could proceed even though the plaintiff's individual claim had become moot).

[3] In *Cruz v. Farquharson*, 252 F.3d 530 (1st Cir. 2001), the court held that "[d]espite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." *Id.* at 533. However, *Cruz* left open the question of whether mooting the named plaintiff's claim also moots the entire action if the class certification motion has been filed but not yet ruled on. *Id.* at 534 n.3; *see also Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 51 (1st Cir. 2015) ("*Cruz* also left open the possibility that a putative class action may not be moot if a motion for certification was pending when the plaintiff's individual claims became moot . . . .").

*Richardson*), *aff'd*, *Reyna v. Hott*, 921 F.3d 204 (4th Cir. 2019); *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act. Litig.*, No. 1:13-MD-2493-JPB-MJA, 2016 U.S. Dist. LEXIS 191414, at *13 (N.D. W. Va. June 27, 2016) ("[A] complete settlement offer made before the plaintiff files a motion for class certification does not moot the putative class action provided that the plaintiff move for class certification within a reasonable time after discovery."); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 974 F. Supp. 2d 856, 864 (D. Md. 2013) ("[A] complete settlement offer made before class certification does not moot the putative class claims."); *Shifflett v. Kozlowski*, No. 92-0072-H, 1993 U.S. Dist. LEXIS 997, at *10 (W.D. Va. Jan. 25, 1993) ("[E]ven if the named plaintiffs' claims become moot before a class has been certified, the district court may nonetheless certify a class and the action may be maintained as a class action."). While this federal case law is not binding precedent for this Court, it is instructive to observe the weight of precedent in the federal class action context.

Similarly, numerous state courts have also found an exception to mootness where a defendant acts to moot the claim of the named plaintiff prior to class certification. *See, e.g.*, *Growden v. Good Shepherd Health Sys.*, 550 S.W.3d 716, 727 (Tex. App. 2018) (applying an exception to mootness where defendant waived plaintiff's medical bill prior to the court considering class certification); *Frazier v. Castle Ford, Ltd.*, 59 A.3d 1016, 1024 (Md. 2013) (holding that providing individual relief to the putative class representative does not moot a class action if the individual

plaintiff has not had the opportunity for reasonable discovery and to seek class certification); *Jones v. S. United Life Ins. Co.*, 392 So. 2d 822, 823 (Ala. 1981) (holding that when plaintiff's individual case was mooted by defendant paying her claim prior to class certification, plaintiff was not thereby ousted as a proper class representative).

Several cases from other state courts arise in factually similar circumstances. For example, in *Growden*, the plaintiff was charged hospital fees of $25,308.92 for a brief emergency room visit to treat her daughter, who was uninsured. *Growden*, 550 S.W.3d at 720. The plaintiff's complaint sought only declaratory relief on behalf of herself and others similarly situated. *Id.* at 720–21. After the lawsuit was filed, but before a ruling on class certification, the defendant hospital executed an affidavit stating that it waived and had written off the charges, and that it would make no further attempt to collect the plaintiff's bills. At the same time, the defendant sought dismissal of the lawsuit, which was granted by the trial court. *Id.* On appeal, the Court of Appeals of Texas held that while the plaintiff's individual claim became moot when the hospital waived her bill, her class action claims were not mooted, applying a pick off exception to mootness. *Id.* at 727.

Another similar case involved a bank's attempt to enforce a "due-on-encumbrance" acceleration clause in a mortgage contract when the plaintiff-homeowner took out a second lien on the home. *See La Sala v. Am. Sav. & Loan Ass'n*, 5 Cal. 3d 864 (1971). Upon receiving notice of the bank's intent to accelerate

the mortgage unless the homeowner agreed to a waiver fee and an increase in the loan's interest rate, the homeowner filed a class action complaint for declaratory relief. *Id.* at 869–70. Before any class was certified, the bank voluntarily waived its right to accelerate against the named plaintiffs and sought dismissal of the action for lack of a representative plaintiff. *Id.* at 870. While not explicitly calling this a pick off exception to mootness, the Supreme Court of California ruled that the plaintiffs could continue to pursue class action certification even though their individual claims had been resolved by the bank's actions. *Id.* at 871 ("Even if the named plaintiff receives all the benefits that he seeks in the complaint, such success does not divest him of the duty to continue the action for the benefit of others similarly situated.").

## III. *Richardson* **and the Relation Back Doctrine**

In *Richardson,* the Court recognized that Article III mootness doctrine in class action cases is more "flexible" than other federal justiciability requirements and that " '[i]n the class action context, special mootness rules apply' for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action." *Richardson*, 829 F.3d at 278–79 (quoting *Brown v. Phila. Hous. Auth.,* 350 F.3d 338, 343 (3d Cir. 2003)). Thus, class certification may, in certain circumstances, relate back to the filing of the complaint, permitting a named plaintiff to serve as a putative class representative, even though his individual claims are no longer justiciable. Most commonly, this applies to claims that are "inherently transitory" or "capable of repetition, yet evading

review." *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); *Geraghty*, 445 U.S. at 398–99. The facts in *Richardson* presented a different application of the relation back doctrine, which that court called "the picking off exception to mootness." *Richardson*, 829 F.3d at 279.

The plaintiff in *Richardson* was a former inmate at a federal penitentiary, USP Lewisburg, who sought relief for violations of his Fifth and Eighth Amendment rights and on behalf of dozens of other inmates who he alleged suffered similar unconstitutional treatment. Richardson was transferred to another federal facility after his complaint was filed but before he moved for class certification. "Richardson *had* standing to seek injunctive relief when he filed his amended complaint (as he was still housed . . . at USP Lewisburg), [so the court] must ask whether his claims for injunctive relief are now moot because he is no longer housed there." *Id.* at 278. Neither Richardson's nor Chamber's individual claims were inherently transitory. However, their individual claims became moot as a result of actions over which they had no control.

Applying its own precedent in *Weiss v. Regal Collections*, 385 F.3d 337, 347–48 (3d Cir. 2004) (applying relation back doctrine to produce "picking off" exception in debt collection context where the defendant made Rule 68 offer for full amount of potential recovery before the plaintiff moved for class certification), *abrogated on other grounds by Campbell-Ewald Co.*, 136 S. Ct. 663, and after a careful review of similar cases across the country, the *Richardson* court held that the relation back

doctrine can be applied to relate a now-moot individual claim back to the date of the class action complaint where a would-be class representative is not given a fair opportunity to show that class certification is warranted and provided that the plaintiff has not unduly delayed seeking class certification. *Richardson*, 829 F.3d at 286.

Thus, in applying this standard, a trial court must look to "two separate but related considerations." *Id.* First, it is necessary to examine whether the plaintiff was given a "fair opportunity" to show that class certification is appropriate. *Id.* at 283 (citing *Campbell-Ewald Co.*, 136 S. Ct. at 672 ("[A] would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted.")). Second, a trial court must next consider whether the plaintiff submitted the issue of class certification to the trial court without "undue delay." *Id.* at 287 (citing *Weiss*, 385 F.3d at 348).

In *Richardson,* there was no showing of any purpose or design on the part of the defendant to intentionally relocate the plaintiff to another facility in order to moot the putative class action case. Also, it was irrelevant to the analysis that the plaintiff there, as with Chambers here, had not actually filed a class certification motion prior to the event that mooted the plaintiff's individual claim. Applying the pick off exception, the court concluded that the case was not moot because only six weeks had passed between the filing of the amended class action complaint and Richardson's transfer to another facility, the event that allegedly mooted his individual claim, and

because Richardson "could not be expected to have presented the class certification issue to the District Court within that amount of time." *Richardson*, 829 F.3d at 289. The *Richardson* court also noted that, in fairness, either party may raise the issue of class certification, concluding that "[n]othing in the plain language of Rule 23(c)(1)(A) [of the Federal Rules of Civil Procedure] either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question." *Id.* at 288 (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–40 (9th Cir. 2009)).

We previously have held that "Rule 23 [of the North Carolina Rules of Civil Procedure] should receive a liberal construction" to ensure that the class action mechanism remains a viable procedure when applicable. *Crow*, 319 N.C. at 280, 354 S.E.2d at 464 (quoting *English v. Holden Beach Realty Corp.*, 41 N.C. App. 1, 9, 254 S.E.2d 223, 230–31, *disc. rev. denied*, 297 N.C. 609, 257 S.E.2d 217 (1979)). In state court, mootness is "a form of judicial restraint," rather than a jurisdictional concern, as it is in federal court. *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978). In the class action context, where absent class members may have unresolved claims, any prudential concerns that may guide the exercise of that constraint are outweighed by the value of serving the multiple purposes of the class action procedure, including " 'the efficient resolution of the claims or liabilities of many individuals in a single action' and 'the elimination of repetitious litigation and

possible inconsistent adjudications involving common questions, related events, or requests for similar relief.' " *Crow*, 319 N.C. at 280, 354 S.E.2d at 464. Therefore, it is appropriate to adopt the *Richardson* standard in these circumstances to allow relation back of the plaintiff's claim to the date of the filing of the complaint for purposes of the justiciability analysis in class action cases under Rule 23 of the North Carolina Rules of Civil Procedure.

Further support for this interpretation of North Carolina class action law comes from this Court's prior decision in *Reep v. Beck*, 360 N.C. 34, 619 S.E.2d 497 (2005). There, we held that while it is not error as a matter of law to rule on a motion to dismiss prior to ruling on a class certification motion, "[t]his Court is confident that, in determining the sequence in which motions will be considered, North Carolina judges will continue to be mindful of longstanding exceptions to the mootness rule and other factors affecting traditional notions of justice and fair play." *Id.* at 40, 619 S.E.2d at 501 (citing *Simeon v. Hardin*, 339 N.C. 358, 371, 451 S.E.2d 858, 867 (1994); *Cty. of Riverside*, 500 U.S. at 52; 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.64[1][b] (3d ed. 2005)). It is such a notion of justice and fair play that motivates the Court to adopt the pick off exception and allow the relation back of the plaintiff's claim for justiciability purposes.

Requiring that a named plaintiff have a fair opportunity to present the issue of class certification to the trial court ensures that class representatives will not be picked off at the dawn of the litigation before they have had a chance to engage in

appropriate discovery and otherwise prepare to seek class certification from the trial court. It will prevent both a "race to pay off named plaintiffs" before they can pursue class certification and premature class certification determinations before the development of the factual record necessary for a trial court's rigorous analysis of the issues involved in a class certification motion. *Richardson,* 829 F.3d at 282, 288. The question of what constitutes a fair opportunity in this context naturally will vary from case to case based on considerations such as the complexity of the case, the nature of discovery required to determine class certification, the stage at which the named plaintiff's individual claims become moot, and other relevant factors.

The *Richardson* test also provides fairness to the defendant by incorporating an important corollary to the fair opportunity requirement—that is the notion that the plaintiff must present the issue of class certification to the trial court without "undue delay." *Richardson*, 829 F.3d at 287. In other words, a class representative, while taking advantage of the fair opportunity to seek class certification, cannot be dilatory and instead must "act[ ] diligently to pursue the class claims." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 707 (11th Cir. 2014). In cases where the trial court finds the named plaintiff was, in fact, dilatory in seeking class certification, the pick off "exception should not apply and 'courts [should] adhere to the general rule that the mooting of [the] named plaintiff's claim prior to class certification moots the entire case.' " *Richardson*, 829 F.3d at 286 (first alteration in original) (quoting *Lucero*, 639 F.3d at 1249); *see Stein*, 772 F.3d at 707 ("A named plaintiff who does not

act diligently may not have what it takes to adequately present the issues. But to act diligently, a named plaintiff need not file a class-certification motion with the complaint or prematurely; it is enough that the named plaintiff diligently takes any necessary discovery, complies with any applicable local rules and scheduling orders, and acts without undue delay."). The guiding principle underlying the adoption of a pick off exception is fairness to the putative class members. However, the defendant, too, must be shielded from vexatious or unfair litigation tactics. The *Richardson* test provides the appropriate balance between the interests of the respective parties in this regard.

Moses Cone's argument that the U.S. Supreme Court has rejected any exception to mootness in these circumstances is unavailing for several reasons. First, the case Moses Cone relies on, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), emphasized that the Fair Labor Standards Act proceeding at issue in that case was "fundamentally different" from a Rule 23 class action. 569 U.S. at 74. Unlike class certification under Rule 23, "conditional certification" under the FLSA "does not produce a class with an independent legal status, or join additional parties to the action." *Id.* at 75. Therefore, conclusions about a plaintiff's claim becoming moot before certification under the FLSA cannot be transplanted to the Rule 23 class action context. *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018) (stating that cases in the class certification context are inapposite to FLSA actions "because 'Rule 23 actions are fundamentally different from collective actions under the FLSA'

" (quoting *Genesis HealthCare*, 569 U.S. at 74)). The outcome in *Genesis Healthcare* turned on the unique implications of conditional certification under the FLSA, and is not controlling here.

Second, the U.S. Supreme Court has noted that the question presented here is unresolved. *See Campbell-Ewald Co.*, 136 S. Ct. at 672 (noting "we . . . do not [ ] now decide" whether actually mooting the plaintiff's claim before class certification would moot the entire case). In *Campbell-Ewald*, the Court left for another day the question of whether unilateral action by the defendant that satisfied the named plaintiff's individual claim before class certification could moot the entire case. *Id.* Thus, the U.S. Supreme Court has not explicitly endorsed or rejected a pick off exception to mootness in class action cases.

Finally, even if federal law were settled in this area, this Court is required to decide how mootness applies under state law to class actions brought under the North Carolina Rules of Civil Procedure. *See, e.g.*, *Scarvey v. First Fed. Sav. and Loan Ass'n of Charlotte*, 146 N.C. App. 33, 41, 552 S.E.2d 655, 660 (2001) (federal class action cases are not binding on the Court of Appeals). Federal precedents are instructive and we are indeed following the Third Circuit's lead in articulating the pick off exception, but ultimately federal precedent is not binding on how this Court should interpret North Carolina class action law.

Moses Cone further contends that the pick off exception to mootness cannot be applied in this case because the trial court specifically found that there was no

evidence that Moses Cone wrote off Chambers' debt in order to prevent the trial court from ever reaching the question of whether a class should be certified. Given the standard that we utilize here, defendant's motive is not relevant to the inquiry. The pick off exception to mootness that we have adopted does not rely on any finding of bad faith or improper motive on the part of any party. It is perfectly reasonable that in order to minimize its exposure and limit its liability, a defendant would seek to end a class action lawsuit as quickly as possible before class certification. The pick off exception is not a penalty for bad actions, it is simply necessary to protect the class action mechanism as a means of promoting judicial economy, fairness, deterrence, and efficiency in the determination of disputed claims, particularly where the amount in controversy in any particular case is small, but the number of potentially impacted plaintiffs is large.

Further, in light of the *Richardson* standard, there is no required showing of a pattern of repeated picking off of numerous individual plaintiffs, time and again, before the pick off exception applies. It was this type of evidence that the trial court held was missing in this case. The trial court reasoned in its legal analysis of defendants' motion to dismiss that

> [p]erhaps if Moses Cone were to continue to dismiss its collection actions against all patients who challenge the validity of the Contract, the Court could consider whether Moses Cone is taking action to evade judicial review of its Contract. But at this time, the action does not fit within the narrow capable-of-repetition exception.

However, where the pick off exception to mootness applies, rather than the capable of repetition, yet evading review exception, the question is whether the plaintiff had a reasonable opportunity to pursue class certification and did so without undue delay. The defendant's actions in other cases is not relevant to that inquiry.

The dissent's proposed solution to the mootness problem, namely that other putative class members can now file their own new lawsuit, ignores the fact that the statute of limitations might continue to run against class members who, while Chambers' claims were pending, would have no need to file separately. Additionally, the dissent takes us to task for improperly legislating, but in fact, mootness is a court-made doctrine and this Court previously has adopted several exceptions to mootness absent any action by the legislature. *See, e.g.*, *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (per curiam) (adopting the exception to mootness where a case involves "a question that involves a matter of public interest, is of general importance, and deserves prompt resolution" (citations omitted)); *Simeon*, 339 N.C. at 371, 451 S.E.2d at 867 (adopting an exception to mootness where the "case belongs 'to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class'" and where "[t]he claim . . . is one that is distinctly 'capable of repetition, yet evading review.'" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11 (1974)); *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977) (adopting the exception to mootness where "collateral legal consequences of an adverse nature can reasonably

be expected to result therefrom" (citing *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

There still are countless ways that a class action matter may become moot after the

original complaint is filed, depending on the nature of the case and the allegations of

the complaint. We have determined that the *Richardson* standard for evaluating

whether an individual plaintiff's claim should or should not relate back to the date

the complaint was filed for the purpose of determining mootness, commonly called a

pick off exception, is a fair balance of the rights of all parties.

## IV. Conclusion

Accordingly, we conclude that a remand to the trial court to apply the

appropriate legal standard is warranted. *See, e.g.*, *Worley v. Moore*, 370 N.C. 358,

368, 807 S.E.2d 133, 140–41 (2017) (reversing and remanding for an application of

the proper legal standard where the trial court applied an incorrect test). Our holding

today recognizes a narrow exception to the doctrine of mootness when a named

plaintiff's individual claim becomes moot before the plaintiff has had a fair

opportunity to pursue class certification and has otherwise acted without undue delay

regarding class certification. In these limited circumstances, the named plaintiff's

claim relates back to the filing of the complaint for mootness purposes, and he retains

the legal capacity to pursue class certification and class-wide relief, even though his

individual claim may have been satisfied.[4] The decision of the Court of Appeals is

---

[4] To be sure, even applying the relation back doctrine, obtaining class certification still requires Chambers to meet the stringent requirements of Rule 23 of the North Carolina Rules

reversed, and this case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

of Civil Procedure. *See generally Faulkenbury v. Teachers' & State Emps. Ret. Sys. of N.C.*, 345 N.C. 683, 697, 483 S.E.2d 422, 431 (1997) (describing prerequisites for bringing a class action).

Justice NEWBY dissenting.

The rule of law provides the consistency and predictability citizens need to plan their daily affairs. Under the rule of law, courts generally apply existing precedent and allow the citizens to make significant changes through their elected representatives in the legislature. When a court purports to act under its common-law authority, but in doing so ignores the requirements of a controlling statute, it usurps a role for which it was not designed. Historically, this Court has recognized, as a matter of judicial restraint, that mootness renders a case nonjusticiable. And the General Assembly has declared that class representative plaintiffs must adequately represent the interests of the class. Today, the majority leaves behind both of these well-established legal principles. The majority adopts an exception to mootness that is neither supported by this Court's precedent nor justified by the policy considerations the majority attempts to address. It thus gives judicial life support to class action claims led by named plaintiffs who have no personal interest in the case and are in no position to adequately represent the interests of the rest of the class claimants. I respectfully dissent.

Stated objectively, the procedural facts here do not justify the majority's departure from our longstanding precedent. On 23 August 2011, the named plaintiff, Christopher Chambers, came to defendant hospital for emergency treatment. He, like every other patient, was given a form on which he was asked to agree to pay for the

hospital's services in full. He was not asked whether he was insured, presumably because federal law restricts a hospital's ability to consider the insurance status of a patient who needs emergency medical care. *See, e.g.*, 42 U.S.C. § 1395dd (2011); 42 C.F.R. § 489.24(d)(4). After Chambers left the hospital, the hospital billed him for the services based on the "Chargemaster," a document commonly used by hospitals to standardize rates for various medical services. On 11 May 2012, Chambers filed his original class complaint against the hospital claiming, among other things, breach of contract and breach of the covenant of good faith and fair dealing. The hospital filed a counterclaim against Chambers for payment of its bill.[1] The trial court dismissed some of Chambers's claims, leaving only the contract-related claims intact.

The attorneys representing the plaintiffs here had also filed a similar class action complaint in *Hefner v. Mission Hospital Inc.*, No. 12 CVS 3088, 2015 NCBC LEXIS 115 (N.C. Super. Ct. Dec. 15, 2015). The parties agreed to allow the trial court to address those claims first because they appeared to be virtually identical to the ones filed in this case, and because the plaintiffs' attorneys were the same.[2] In *Hefner*, the trial court denied the plaintiff's class action certification motion because the unique factual issues among the various individual plaintiffs' claims made determination of liability on a class-wide basis inappropriate. After denying class

---

[1] The hospital sought to consolidate into the action against Chambers a separate collection action it had filed against him.

[2] Though the class action allegations in *Hefner* and this case present similar issues, the factual bases for the claims in *Hefner* are unrelated to the facts of this case.

certification the trial court dismissed Hefner's individual claim as moot, finding there was no longer an actual controversy between the hospital and him because the hospital dismissed its counterclaim, binding itself not to seek payment from him.

After the denial of class certification and dismissal in *Hefner*, Chambers filed an amended complaint on 1 April 2016, voluntarily dropping his contract-related claims against the hospital and seeking class action declaratory relief under a new theory. The amended complaint explained that Chambers was acting as a representative of all individuals who, within four years of the original complaint's filing, received emergency care at the hospital, the cost of which was not covered by insurance, and who were not granted a discount or waiver by the hospital. The amended complaint asserted that this class of individuals "consists of at least hundreds, if not thousands, of persons." After Chambers's decision not to pursue his individual contract claims, the hospital dismissed with prejudice its counterclaim for payment from Chambers.[3] Accordingly, Chambers was no longer a member of the class he purported to represent; he owed the hospital nothing. The hospital then moved to dismiss the class action for lack of subject matter jurisdiction because of mootness.

The trial court found that Chambers's claim for declaratory relief was moot because he had no individual interest in the action. In considering the then-

---

[3] According to the hospital, its dismissal of its counterclaim for payment was in response to Chambers's dropping of his individual contract claims.

recognized exceptions to mootness, the trial court found no evidence that the hospital's billing practices were illegal, that any patient would be subject to the same billing terms in the future, or that the hospital would forgive the debt of any other patient in order to avoid judicial review of its billing practices. These facts are uncontested and therefore binding on appeal. The trial court then concluded that no exception to mootness applied. It also determined that because Chambers and the hospital both dismissed their breach of contract claims, "Chambers no longer has a live claim that warrants his representing an ongoing class." The court dismissed his class claim for declaratory relief.

On appeal, a unanimous panel of the Court of Appeals affirmed, applying the language of the class action rule and the longstanding precedent of this Court that parties must have a personal stake in the outcome of a case to adequately represent a class. Chambers successfully petitioned this Court for discretionary review.

Rule 23 of the North Carolina Rules of Civil Procedure provides that "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, *as will fairly insure the adequate representation of all* may, on behalf of all, sue or be sued." N.C.G.S. § 1A-1, Rule 23(a) (2019) (emphasis added). This Court has therefore held that to bring a class action, a party must show (1) "the existence of a class"; (2) that "the named representatives . . . will fairly and adequately represent the interests of all members of the class"; and (3) "that the class members are so numerous that it is impractical

to bring them all before the court." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282–83, 354 S.E.2d 459, 465–66 (1987) (citations omitted). To satisfy the second requirement, the named plaintiff or plaintiffs must have a "genuine personal interest, not a mere technical interest, in the outcome of the action." *Id.* at 283, 354 S.E.2d at 465.

Chambers does not have a genuine personal interest in the outcome of this case. Chambers chose to dismiss his contract claims, and the hospital then dismissed with prejudice its counterclaim against him for payment of its bill. Chambers therefore has no personal stake in seeing the hospital's billing practices invalidated. The trial court thus appropriately found that Chambers's claim was moot.

Because there is no dispute that Chambers's claim is moot, the central question in this case is whether any exception to mootness applies to his claim such that the class action can nonetheless proceed with him as the class representative. In other words, the question is whether Chambers will fairly and adequately represent all members of the class. Before today's opinion, traditional exceptions to mootness have included when the defendant voluntarily ceases the challenged practice, *see, e.g.*, *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 1074, 71 L. Ed. 2d 152, 159 (1982); when the issue presented in the case is "capable of repetition, yet evading review," *Simeon v. Hardin*, 339 N.C. 358, 371, 451 S.E.2d 858, 867 (1994); and when the question involved is a matter of public interest, *In re Hatley*, 291 N.C.

693, 694, 231 S.E.2d 633, 634 (1977). None of these exceptions apply to this case.[4]

The express language of Rule 23, and our precedent, requires that a named plaintiff must adequately represent the class. If a named plaintiff's claim is moot, he does not adequately represent a class of individuals with claims that are not moot. Chambers's claim here is moot, and no mootness exception applies. If the majority followed this Court's precedent and adhered to the rationale of class actions, that would be the end of the matter.

The majority, however, crafts a new exception to mootness, a "pick off" exception, and discards the well-established requirement that a named representative of a class must have a genuine personal interest in the outcome of the case.[5] *See Faulkenbury v. Teachers' and State Emps.' Ret. Sys. of N.C.*, 345 N.C. 683,

---

[4] First, the hospital has not voluntarily ceased its billing such that no indebted party could challenge the practice. Clearly there are other individuals who are able to challenge the practice, as the amended complaint states that there are "at least hundreds" of class members. Neither does this case present an issue that is capable of repetition, yet evading review. The hospital's billing and collections practices against some of these alleged victims appears to be ongoing. Thus, it seems that numerous other individuals with active claims could represent the class now that Chambers's claim is moot. Finally, this case does not involve a matter of public interest as the courts of this State have understood that exception. In this case, the parties most affected by the hospital's billing practices are only those in the alleged class itself. Moreover, since the facts giving rise to this case occurred, the hospital has changed its billing practices, in accordance with federal law, to no longer reference a standard rate system like the one to which Chambers objects.

[5] This Court has the authority to develop the common law. But it does not have the authority to contravene statutory directives. Moreover, when the contemplated change is so drastic as to contravene a long-established and wide-reaching legal doctrine like mootness, this Court should allow the people to decide what sort of change, if any, is necessary and carry out that change through the legislature.

697, 483 S.E.2d 422, 431 (1997). The majority's broadly applicable exception effectively eliminates mootness in the class action context, but, ironically, the majority characterizes its holding as "narrow." Expanding upon the reasoning of the Third Circuit in *Richardson v. Bledsoe*, 829 F.3d 273 (3d Cir. 2016), the majority holds that a class action is not moot "when the event that moots the [named] plaintiff's claim occurs before the [named] plaintiff has had a fair opportunity to seek class certification and provided that the [named] plaintiff has not unduly delayed in litigating the motion for class certification."

This new rule, transplanted from federal law, is unworkable in this case.[6] Chambers originally filed a class complaint on 11 May 2012. Four years later, on 1 April 2016, after it was clear that his alleged class claim was doomed to fail and was adversely affected by his personal claim, he filed an amended class complaint based on an entirely different legal theory and dropped his personal claim. How is a court to apply the majority's test? In other words, when considering whether Chambers has had a "fair opportunity" to file a class certification motion and whether he has "unduly delayed" in bringing such a motion, is the key point in time when the 2012 complaint was filed, when the 2016 complaint was filed, or some other time? A court could not determine what sort of delay is "undue" after years of litigation has passed during which Chambers was permitted to completely change his legal theory.

---

[6] In general, given dissimilarities between state and federal civil procedural rules, this Court should hesitate to transplant whole cloth procedural principles from federal law.

For similar reasons, the new rule is manifestly unfair to defendants. The class Chambers purports to represent includes people who received care at the hospital within four years of the filing of the complaint. The complaint was originally filed on 11 May 2012. Thus, his class action references events that happened as early as 2008. This passage of time raises issues about potential class members who are now immune from collection actions because of statutes of limitations and other considerations. Forcing the hospital to defend itself under such circumstances is unduly burdensome and unfair. The majority's new rule is thus unworkable with such class action complaints that have been amended.

The majority also claims that its new pick-off exception promotes "justice and fair play" to class claimants. It is unclear how that is so. It does not serve the interests of class claimants to allow actions to proceed with named plaintiffs who cannot satisfy the requirements that "the named representatives . . . will fairly and adequately represent the interests of all members of the class; [and] . . . have a genuine personal interest, not a mere technical interest, in the outcome of the case." *Faulkenbury*, 345 N.C. at 697, 483 S.E.2d at 431. Such named plaintiffs likely would not be poised to adequately vindicate the interests of the "at least hundreds, if not thousands," of class members. Therefore, the majority's new rule is unfair not only to defendants, but also to putative class members who need a named plaintiff who will fully vindicate their interests. To put it in terms of the majority's new test, the delay in this case certainly would seem "undue" from the perspective of the members of the purported class

whose interests have taken the backseat while Chambers has spent years fighting to be the one who leads the class.

The majority does not even discuss the traditional requirement of class actions that the named plaintiff must adequately represent the interests of class members. It merely makes a passing statement that even under its new rule class actions ultimately must still satisfy the requirements of Rule 23 to obtain certification. The majority thus apparently thinks that all of Rule 23's requirements could be met even if the named plaintiff has no personal stake in the outcome of the case. Perhaps the implication is that when a named plaintiff has shown reasonable diligence to bring a class certification motion, that party has demonstrated some commitment to pursuing the interests of the class claimants as required by Rule 23(a).

If that is the majority's assumption, it is a misguided one. If the named plaintiff no longer has a personal interest in the outcome of the case, that party *cannot* fairly and adequately represent the interests of all class members. The named plaintiff's interest is, to quote *Faulkenbury*, "mere[ly] technical." 345 N.C. at 697, 483 S.E.2d at 431. Particularly in cases like this one, in which hundreds of other parties may more adequately represent the class interests than a party who has no personal stake in the outcome, there is no policy justification for keeping the class action alive with the original named plaintiff as the class representative.

Finally, the majority's apparent concern, that a defendant could inhibit a class claim from ever reaching satisfactory resolution, is unwarranted. The majority claims

that its new rule "ensures that class representatives will not be picked off at the dawn of the litigation before they have had a chance to engage in appropriate discovery and otherwise prepare to seek class certification from the trial court." The majority believes its rule "will prevent . . . a 'race to pay off named plaintiffs' before they can pursue class certification . . . ." (Quoting *Richardson*, 829 F.3d at 282).

That concern is unfounded both in this case and as a general matter. In this case, the trial court specifically found there "is no record to support the argument" that the hospital intended to "pick off" Chambers. Indeed, it only dismissed its counterclaim against him after Chambers dismissed his individual contract claims. Thus, even if in theory some sort of "pick-off" exception should be created, the facts of this case do not warrant it here. Pending since 2012, this case does not present a good vehicle for the Court to create a new rule.

In general, repeated "picking off" of named plaintiffs is not a strategy that defendants are likely to vigorously pursue. When a named plaintiff's claim is mooted and the class action is therefore dismissed, the class action can be refiled with a new named plaintiff.[7] For a defendant to fully resolve all claims against it, it either must settle the claims of a sufficient number of class members individually until no "class" remains, or it must eventually deal with the class as a whole. Thus, a defendant would likely have to settle many individual claims to make the issues raised by class action

---

[7] Again, that observation holds true in this case, in which Chambers has alleged that there are "at least hundreds, if not thousands," of class members. Many of them may be available to pursue this case as a named representative.

finally disappear. This strategy often will be cost-prohibitive, and, even if a defendant can afford it, it will lead to most class members receiving a satisfactory resolution of their claims.

Chambers independently dismissed his contract claims against the hospital. Only after that did the hospital dismiss its counterclaim against Chambers, rendering his claim moot and removing his personal stake in the case. Rather than resuscitating old class actions with inadequate representation, the best course is our historic one, which allows parties to find mutually beneficial paths forward, accepts any consequences to justiciability, and allows classes to regroup and return with proper representation. Not only could this encourage settlements that give relief to individual claimants, but it would also help ensure that the interests of those still in the class are vindicated by the attorneys dealing primarily with the named plaintiffs, who must have an active interest in the case. The majority's expansive new path is both unnecessary and contrary to North Carolina law. I respectfully dissent.